# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## IN THE NORTHERN DIVISION AT KNOXVILLE

| | | |
|---|---|---|
| TENNESSEE CLEAN WATER NETWORK, CHARLES MCMILLAN, JAMES MCMILLAN, and MICHAEL MCMILLAN, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No.3:09-CV-449 |
| BABELAY FARM, LLC, CLEAR CREEK CONSTRUCTION, LLC, SHARP CONTRACTING, INC., THE LEGENDS AT WASHINGTON PIKE, LLC, and HATHAWAY CONSTRUCTION CO., INC., | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## FIRST AMENDED COMPLAINT

Plaintiffs Tennessee Clean Water Network, Charles McMillan, and James McMillan, by and through counsel, allege as follows:

### NATURE OF THE CASE

1.    This is a citizen suit, brought pursuant to Section 505(a)(1) of the federal Clean Water Act (hereinafter "the Act"), as amended, 33 U.S.C. § 1365(a)(1), to address stormwater pollution discharged from a construction site known as the Legends at Washington Pike Subdivision ("Legends Subdivision") into Murphy Creek and Love Creek in Knox County, Tennessee.  Defendants Babelay Farm, LLC ("Babelay"), Legends at Washington Pike, LLC ("Legends"), Clear Creek Construction, LLC ("Clear Creek"), Hathaway Construction Co., Inc.

- 1 -

EXHIBIT

2

("Hathaway"), and Sharp Contracting, Inc. ("Sharp") have repeatedly violated the terms of the Act and of the National Pollutant Discharge Elimination System (hereinafter "NPDES") permit for the Legends Subdivision issued pursuant to 33 U.S.C. § 1342. Defendants have failed to take the necessary and legally required steps to prevent the dislodging and suspension of sediment in the stormwater discharged from the Legends Subdivision to Love Creek, Murphy Creek, and their tributaries. Plaintiffs seek a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorney and expert witness fees, for Defendants' repeated and continuing violations of the Act. In addition, Plaintiffs Charles, James and Michael McMillan, who own, reside on and use family property adjacent to the Legends development for raising livestock and farming, seek injunctive relief and damages under state law resulting from Defendants' nuisance, trespass and negligence that have caused groundwater and surface water pollution on their property.

## JURISDICTION

2. This Court has subject matter jurisdiction under Section 505(a) of the Act, 33 U.S.C. § 1365(a), and 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction over the claims arising under Tennessee state law pursuant to 28 U.S.C. § 1367(a).

4. Plaintiffs have complied with the pre-suit notice requirements of the Act, 33 U.S.C. § 1365(b)(1)(A). On July 29, 2009, Plaintiffs mailed a notice of intent to file suit to address the violations at the Legends Subdivision to Defendants, the Administrator of the U.S. Environmental Protection Agency (hereinafter "EPA"), the Regional Administrator of the EPA, the Director of the Tennessee Department of Environment and Conservation Division of Water Pollution Control (hereinafter "TDEC"), and the U.S. Attorney General. (The notice is attached

- 2 -

as Exhibit 1 and incorporated by reference herein.) On August 27, 2009, Plaintiffs sent an Addendum to the July 29, 2009 Notice to the same entities, detailing additional violations and listing Michael McMillan as an additional plaintiff. (The notice is attached as Exhibit 2 and incorporated by reference herein.) These notices complied with 33 U.S.C. § 1365(b)(1)(A) and with 40 C.F.R. Part 135, Subpart A. More than 60 days have passed since these notices were served on Defendants and these agencies.

5.      EPA has not commenced and is not diligently prosecuting a civil or criminal action in a court of the United States or a State to redress the violations of the Act by Defendants. In addition, TDEC has not commenced and is not diligently prosecuting a civil or criminal action in a court of the United States or a State to redress the violations of the Act by Defendants.

6.      Neither EPA nor TDEC had commenced an administrative penalty action under Section 309(g) of the Act, 33 U.S.C. § 1319(g), or under a comparable Tennessee law, to redress violations by Defendants prior to the service of Plaintiffs' July 29, 2009 notice letter. TDEC issued an agreed order on September 15, 2009, against Babelay and Sharp. This suit has been commenced within 120 days of the service of Plaintiffs' 60-day notice.

7.      Plaintiffs will, immediately upon receipt of a file stamped copy of this First Amended Complaint, mail a copy of this to the Administrator of the EPA, the Regional Administrator of EPA Region 4, and to the Attorney General of the United States.

8.      Venue is appropriate in the Eastern District of Tennessee, pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this District.

- 3 -

## PARTIES

9.     The Tennessee Clean Water Network ("TCWN") is an nonprofit corporation organized under the laws of the State of Tennessee with its principal office in Knoxville, Tennessee. TCWN was organized, among other reasons: to advocate for strong policies and programs that result in more effective protection and restoration of Tennessee waters; to educate organizations, decision-makers, and the public about important water resource issues; and to ensure the protection and restoration of Tennessee's waters. TCWN is a membership organization. TCWN has members who own property and reside on or near Love Creek, Murphy Creek, and their respective tributaries, in Knox County, Tennessee, downstream from Defendants' construction site. Members of TCWN also use Love Creek, Murphy Creek, and their tributaries for fishing, other recreation, and livestock watering. Members of TCWN have been and will be directly and substantially injured in their use and enjoyment of property and in their recreational and aesthetic enjoyment of Murphy Creek, Love Creek, their respective tributaries, and downstream waters as a direct result of Defendants' violations of the Act. The relief sought in this case would provide redress for these injuries.

10.     Plaintiff Charles S. McMillan is a farmer who owns real property in Knox County, Tennessee located at 4745 and 5112 McCampbell Drive (the "McMillan Farm"), Knox County Parcel ID numbers, respectively, 049031 and 059003. The McMillan Farm has belonged to members of the McMillan family for several generations. This property is adjacent to, and downstream from, the Legends Subdivision. A drinking water well situated on the property at 5112 McCampbell Drive, which is adjacent to the Legends Subdivision, has been contaminated by construction activities at the Legends Subdivision. Murphy Creek flows through the McMillan Farm and its confluence with Whites Creek is located on the McMillan Farm. These

- 4 -

creeks have been, and continue to be, polluted by illegal stormwater discharges from the Legends Subdivision.

11.    Plaintiff James McMillan, Charles' son, lives on the McMillan Farm. He pastures his cattle on the McMillan Farm, and his cattle drink from Whites Creek and Murphy Creek and also from the contaminated well.

12.    Plaintiff Michael McMillan, Charles' son, also lives on the McMillan Farm and farms the land and patures cattle thereon. He and his family have utilized the now contaminated drinking water well as the water supply for their residence on the McMillan Farm since the early 1990's. Since the well was contaminated as a result of construction activities on the Legends site, Michael and his family are no longer able use the contaminated well as a water supply and instead have to bring in water for drinking, cooking, bathing, and other basic household uses.

13.    Each Plaintiff is a "citizen" within the meaning of 33 U.S.C. § 1365(a).

14.    Defendant Babelay is a for-profit limited liability company organized under the laws of the State of Tennessee with its principal place of business in Knoxville, Tennessee. The principal address of Babelay is 108 Stekoia Lane, Suite 103, Knoxville, Tennessee 37912 Babelay owns a significant portion of the Legends Subdivision, including the area on which a roadway from Washington Pike into the development is currently under construction. The address of the lot is 5304 McCampbell Drive, Knoxville, Tennessee 37918. The lot is designated as Knox County Parcel ID number 049 08801. Defendant Babelay has been issued a Notice of Coverage ("NOC") under the National Pollutant Discharge Elimination System ("NPDES") Permit issued for land disturbance at the entire Legends subdivision, Permit No. TNR100000, the General NPDES Permit for Discharges of Storm Water Associated with Construction Activities

- 5 -

and is one of the responsible parties for compliance with that permit for construction activities on the property.

15.     Defendant Legends is a for-profit limited liability company organized under the laws of the State of Georgia, and authorized to do business in Tennessee, with its principal place of business in Macon, Georgia. The principal address of Legends is 3085 Vineville Ave, Macon, Georgia 31204. Legends owns 284 lots on the portion of the Legends Subdivision on which an approximately 264-unit apartment project is currently under construction, all of which are included in Knox County Parcel ID number 049-08802. The addresses, located in Knoxville, Tennessee, include, but may not be limited to, 3617-3676 Raven Grove Way, 5600-5610 Andover Village Way, 5601-5709 Poston Way, 5602-5612 Harbor Walk Way, 5605-5716 Holly Grove Way, and 5715 Jasper Grove Way.

16.     Defendant Clear Creek is a for-profit limited liability company organized under the laws of the State of Tennessee with its principal place of business in Knoxville, Tennessee. The principal address of Clear Creek is 108 Stekoia Lane, Suite 103, Knoxville, Tennessee 37912. Clear Creek is the general contractor for construction of the roadway on the property owned by Babelay.

17.     Defendant Hathaway is a for-profit corporation organized under the laws of the State of Georgia, and authorized to do business in Tennessee, with its principal place of business in Atlanta, Georgia. The principal address of Hathaway is 5901-C Peachtree, Dunwoody Road, Suite 495, Atlanta, Georgia 30328. Hathaway is the general contractor for apartment construction on the land owned by Legends.

18.     Defendant Sharp is a for-profit corporation organized under the laws of the State of Tennessee, with its principal place of business in Maryville, Tennessee. The principal address

- 6 -

Case 3:09-cv-00449   Document 3   Filed 10/27/09   Page 6 of 37
Case 3:10-cv-00231-TWP-HBG   Document 1-2   Filed 05/21/10   Page 6 of 56   PageID #: 85

of Sharp is 235 South Old Glory Road, Maryville, Tennessee 37801. Sharp is the grading subcontractor to Clear Creek for the roadway improvements. Sharp is also the grading subcontractor to Hathway for the apartment construction.

19. Each Defendant is a "person" within the meaning of 33 U.S.C. §§ 1362(5) and 1365(a)(1).

<center>**STATUTORY BACKGROUND**</center>

20. Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a point source into waters of the United States except in compliance with various enumerated sections of the Act. Among other things, Section 301(a) prohibits such discharges that are not authorized by, or that are in violation of, a National Pollutant Discharge Elimination System ("NPDES") Permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

21. Stormwater discharges resulting from construction activities including clearing, grading, filling, and excavating that result in the disturbance of one acre or more of total land area are unlawful except when covered by, and in compliance with, a NPDES permit. 40 C.F.R. § 122.26(c).

22. The State of Tennessee has been delegated the authority to implement the permitting programs of the Act by EPA, including the NPDES permit program, pursuant to 33 U.S.C. § 1342(b). TDEC is the water pollution control agency for purposes of the Act, and has drafted regulations pursuant to that authority implementing the Act's permitting programs within the State of Tennessee. *See* Tenn. Code Ann. § 69-3-105(h)(1).

23. The Tennessee General NPDES Permit For Discharges of Storm Water Associated with Construction Activities ("TNCGP"), permit No. TNR100000 is issued by TDEC

<center>- 7 -</center>

for construction activities that result in the disturbance of one acre or more of total land area. Coverage under this permit requires, among other conditions, submission of a stormwater pollution prevention plan ("SWPPP"). Once a site obtains permit coverage, the TNCGP requires, among other things, that the SWPPP meet certain minimum standards and be updated as needed, that the SWPPP be fully implemented as written, that the SWPPP be updated as required, that the permittee conduct adequate inspections, and that the stormwater discharges do not cause or contribute to water quality violations in the receiving stream.

24.     A violation of an NPDES permit issued by TDEC is a violation of the Tennessee Water Quality Control Act of 1977, Tenn. Code Ann. §§ 69-3-101, *et seq.*, TDEC rules, including Chapter 1200-4-5, and the federal Clean Water Act.

25.     A citizen suit, pursuant to 33 U.S.C. § 1365(a)(1), may be brought for violations of the terms of NPDES permits, as well as for discharges of pollutants from a facility into waters of the United States without a valid NPDES permit. 33 U.S.C. § 1365(f).

26.     Under 33 U.S.C. § 1365(g), "citizen" means "a person or persons having an interest which is or may be adversely affected." "Person," pursuant to 33 U.S.C. § 1362(5), includes "an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body."

## GENERAL ALLEGATIONS

27.     On July 9, 2008, Babelay submitted a Notice of Intent ("NOI") to TDEC to obtain coverage under the TNCGP for stormwater discharges resulting from construction of a new roadway on 5.49 acres of the Legends Subdivision. United Residential Properties, the parent company of Legends, submitted a separate NOI to TDEC on March 17, 2009 to cover the additional 15.3 acres to be cleared for the apartments.

- 8 -

28.     TDEC issued a Notice of Coverage ("NOC") to Babelay effective August 25, 2008 under Tracking No. TNR133211. As of September 14, 2009, TDEC has not updated the NOC issued on August 25, 2008 in response to more recent NOIs.  However, TDEC considers TNR133211 to cover the entire Legends subdivision construction site, including the 5.49 acre roadway improvements and the 15.3 acre apartment construction site.

29.     Defendants began construction at the Legends Subdivision on or before March 31, 2009.  Defendants have disturbed more than one acre of land at the Legends Subdivision construction site.   At the time construction-related clearing activities began, the entire construction site became a point source under the Act.  40 C.F.R. § 122.26(b)(14)(x).

30.     On numerous occasions since construction began in March 2009, Defendants have discharged stormwater containing sediment and polyacrylamide from the Legends Subdivision.  This sediment and  polyacrylamide are pollutants within the meaning of the Clean Water Act, 33 U.S.C. § 1362(6).

31.     Defendants  discharge  stormwater  containing  these  pollutants  from  the Washington Pike side of Legends Subdivision construction site to a tributary of Love Creek. Love Creek is a continuously flowing stream forming geographic features depicted on United States Geological Survey topographical maps.  Love Creek is listed under Section 303(d) of the Act, 33 U.S.C. § 1311(d), as impaired for siltation, a condition caused primarily by land development such as that occurring at the Legends Subdivision.

32.     The discharge of pollutants to Love Creek can significantly affect the chemical, physical, and biological integrity of navigable in fact waters downstream, including the Holston River, which is part of interstate waters and is widely used for boating.

- 9 -

33. Defendants also discharge stormwater containing pollutants to Murphy Creek from the McCampbell Drive side of the Legends Subdivision construction site. Murphy Creek is a continuously flowing stream forming geographic features depicted on United States Geological Survey topographical maps. Murphy Creek is a tributary of Whites Creek. The confluence of Murphy Creek and Whites Creek is on the McMillan farm just downstream from Defendants' discharges. Whites Creek is 303(d) listed for habitat impairment and is subject to the Fort Loudoun Lake Watershed total maximum daily load ("TMDL") for sediment. Whites Creek is a tributary of First Creek. First Creek is 303(d) listed as impaired by siltation and is also subject to the Fort Loudoun Lake TMDL.

34. The discharge of pollutants into Murphy Creek can significantly affect the chemical, physical, and biological integrity of navigable in fact waters downstream, including First Creek and the Tennessee River, which is part of interstate waters and is widely used for boating.

35. Murphy Creek, Love Creek, and Whites Creek and their tributaries, are "waters of the United States" as that term is used in the Act and as it has been interpreted by the federal courts.

36. TDEC sent a notice of violation to Babelay on May 12, 2009.

37. Knox County sent two notices of violation to Babelay on May 11, 2009.

38. Knox County sent a notice of violation to Legends on May 13, 2009 and imposed a $5,000 penalty for breach of Detention Pond #3 on May 11, 2009. On July 22, 2009, Sharp paid a reduced penalty of $2,500 for this single violation.

39. Knox County and TDEC held a compliance meeting with Defendants on May 14, 2009.

- 10 -

40.     TDEC issued Director's Order No. 09-0073 to Babelay and Sharp on June 11,
2009.    The Director's Order required revised SWPPPs, reconsideration of the use of
polyacrylamide, full implementation of EPSCs, and additional inspection requirements. Babelay
and Sharp both appealed the Director's Order.  The Director's Order remained in effect during
the pendency of the appeal.

41.     A Notice of Intent to File Citizen Suit, dated July 29, 2009, was mailed to
Defendants Babelay, Clear Creek, Sharp, Legends and Hathaway in which Plaintiffs identified
numerous violations of the Tennessee Water Quality Control Act, Tenn. Code Ann. §§ 69-3-101
*et. seq.,* and the regulations promulgated thereunder, as well as the TNCGP (hereinafter "July
Notice").

42.     An Addendum to the July Notice, dated August 27, 2009, was mailed to
Defendants Babelay, Clear Creek, Sharp, Legends and Hathaway in which Plaintiffs identified
additional violations pf the Tennessee Water Quality Control Act, Tenn. Code. Ann. §§ 69-3-101
*et. seq.,* and the regulations promulgated thereunder, as well as the TNCGP, and further
identified an additional Plaintiff (hereinafter "August Notice").

43.     The July Notice is attached hereto as Exhibit 1, and the notice and the identified
violations are incorporated by reference as if fully set forth herein.

44.     The August Notice is attached hereto as Exhibit 2, and the notice and the
identified violations are incorporated by reference as if fully set forth herein.

45.     Knox County sent a notice of violation to Legends on August 18, 2009 for failure
to temporarily stabilize non-vegetated areas within 15 days.

46.     TDEC issued a final Agreed Order, Case No. WPC09-0073,  on September 15,
2009 to Babelay and Sharp.  The Agreed Order is very similar to the Director's Order, except

- 11 -

that the fine was reduced by $3,000 and responsibility for various compliance measures was allocated to Sharp, Babelay, or both. This Agreed Order imposes a $12,000 noncontingent civil penalty for violations of the TNCGP on May 7, 2009, May 11, 2009, and June 11, 2009. Like the Director's Order, the Agreed Order requires revised SWPPPs, full implementation of EPSCs, and additional inspection requirements. The Agreed Order does not address violations on other dates, or violations regarding discharges to Love Creek. TDEC has not filed this Agreed Order in a court.

47. Despite these notices of violation, TDEC orders, and July Notice, Defendants continue to violate the terms of the TNCGP, including, but not limited to, the following water quality violations after the July Notice (in addition to other permit violations):

a. TCWN documented additional violations on August 4, 2009, when Defendants discharged sediment-laden stormwater from the eastern tributary of Murphy Creek (referred to in the July Notice as Outfall 2) which caused objectionable color contrast at Murphy Creek, and from the McCampbell Drive driveway (referred to in the July Notice as Outfall 3) in concentrations detrimental to livestock, fish, or aquatic organisms and which caused objectionable color contrast at Murphy Creek.

b. TCWN documented additional violations on August 11, 2009, when Defendants discharged sediment-laden stormwater from the Washington Pike construction entrance (referred to in the July Notice as Outfall 1) in concentrations detrimental to livestock, fish, or aquatic organisms (1,100 NTU) and which caused objectionable color contrast at Love Creek, from the eastern tributary of Murphy Creek (referred to in the July Notice as Outfall 2) in concentrations detrimental to

- 12 -

livestock, fish, or aquatic organisms (360 NTU) and which caused objectionable color contrast at Murphy Creek, and from the McCampbell Drive driveway (referred to in the July Notice as Outfall 3) in concentrations detrimental to livestock, fish, or aquatic organisms and which caused objectionable color contrast at Murphy Creek.

c. TCWN documented additional violations on August 16, 2009, when Defendants discharged sediment-laden stormwater from the Washington Pike construction entrance (referred to in the July Notice as Outfall 1) in concentrations detrimental to livestock, fish, or aquatic organisms (800 NTU), and from the eastern tributary of Murphy Creek (referred to in the July Notice as Outfall 2) which caused objectionable color contrast at Murphy Creek.

d. TCWN documented additional violations on August 19, 2009, when Defendants discharged sediment-laden stormwater from the eastern tributary of Murphy Creek (referred to in the July Notice as Outfall 2) which caused objectionable color contrast at Murphy Creek.

e. TCWN documented additional violations on August 20, 2009, when Defendants discharged sediment-laden stormwater from the Washington Pike construction entrance (referred to in the July Notice as Outfall 1) which caused objectionable color contrast at Love Creek.

f. TCWN documented additional violations on August 29, 2009, when Defendants discharged sediment-laden stormwater from the Washington Pike construction entrance (referred to in the July Notice as Outfall 1) in concentrations detrimental to livestock, fish, or aquatic organisms and which caused objectionable color

- 13 -

contrast at Love Creek, and from the eastern tributary of Murphy Creek (referred to in the July Notice as Outfall 2) in amounts detrimental to livestock, fish, or aquatic organisms and which caused objectionable color contrast at Murphy Creek.

g.  TCWN documented additional violations on September 10, 2009, when Defendants discharged sediment-laden stormwater from the Washington Pike construction entrance (referred to in the July Notice as Outfall 1) in concentrations detrimental to livestock, fish, or aquatic organisms (3,600 NTU) and which caused objectionable color contrast at Love Creek, and from the eastern tributary of Murphy Creek (referred to in the July Notice as Outfall 2) in amounts detrimental to livestock, fish, or aquatic organisms (1,400 NTU) and which caused objectionable color contrast at Murphy Creek.

h.  After the adoption of the final Agreed Order, TCWN documented violations on September 16, 2009, when Defendants discharged sediment-laden stormwater from the eastern tributary of Murphy Creek (referred to in the July Notice as Outfall 2) in concentrations detrimental to livestock, fish, or aquatic organisms (1,900 NTU) and which caused objectionable color contrast at Murphy Creek.

i.  TCWN documented additional violations on September 26, 2009 when Defendants discharged sediment-laden stormwater from the Washington Pike Construction entrance (referred to in the July Notice as Outfall 1) in concentrations detrimental to livestock, fish, or aquatic organisms (550 NTU), from the eastern tributary of Murphy Creek (referred to in the July Notice as Outfall 2) in concentrations detrimental to livestock, fish, or aquatic organisms

- 14 -

(160 NTU), and from the McCampbell Drive driveway (referred to in the July Notice as Outfall 3) in concentrations detrimental to livestock, fish, or aquatic organisms (190 NTU).

j. TCWN documented an additional violation on October 6, 2009, when Defendants discharged sediment-laden stormwater from the eastern tributary of Murphy Creek (referred to in the July Notice as Outfall 2) which caused objectionable color contrast at Murphy Creek.

k. TCWN documented an additional violation on October 10, 2009, when Defendants discharged sediment-laden stormwater from the eastern tributary of Murphy Creek (referred to in the July Notice as Outfall 2) which caused objectionable color contrast at Murphy Creek.

l. TCWN documented an additional violation on October 12, 2009, when Defendants discharged sediment-laden stormwater from the eastern tributary of Murphy Creek (referred to in the July Notice as Outfall 2) which caused objectionable color contrast at Murphy Creek.

m. TCWN documented an additional violation on October 13, 2009, when Defendants discharged sediment-laden stormwater from the eastern tributary of Murphy Creek (referred to in the July Notice as Outfall 2) which caused objectionable color contrast at Murphy Creek.

n. TCWN documented additional violations on October 14, 2009, when Defendants discharged sediment-laden stormwater from the Washington Pike Construction entrance (referred to in the July Notice as Outfall 1) in concentrations detrimental to livestock, fish, or aquatic organisms (600 NTU), from the eastern tributary of

- 15 -

Murphy Creek (referred to in the July Notice as Outfall 2) in concentrations detrimental to livestock, fish, or aquatic organisms (350 NTU), and from the McCampbell Drive driveway (referred to in the July Notice as Outfall 3) in concentrations detrimental to livestock, fish, or aquatic organisms.

o. TCWN documented additional violations on October 15, 2009 when Defendants discharged sediment-laden stormwater from the Washington Pike Construction entrance (referred to in the July Notice as Outfall 1) in concentrations detrimental to livestock, fish, or aquatic organisms, from the eastern tributary of Murphy Creek (referred to in the July Notice as Outfall 2) in concentrations detrimental to livestock, fish, or aquatic organisms, and from the McCampbell Drive driveway (referred to in the July Notice as Outfall 3) which caused objectionable color contrast at Murphy Creek.

p. TCWN documented additional violations on October 21, 2009 when Defendants discharged sediment-laden stormwater from the eastern tributary of Murphy Creek (referred to in the July Notice as Outfall 2) in concentrations detrimental to livestock, fish, or aquatic organisms (390 NTU) and which caused objectionable color contrast at Murphy Creek.

q. TCWN documented additional violations on October 22, 2009 when Defendants discharged sediment-laden stormwater from the eastern tributary of Murphy Creek (referred to in the July Notice as Outfall 2) which caused objectionable color contrast at Murphy Creek.

r. TCWN documented additional violations on October 23, 2009 when Defendants discharged sediment-laden stormwater from the eastern tributary of Murphy

Creek (referred to in the July Notice as Outfall 2) which caused objectionable color contrast at Murphy Creek.

48.     The McMillan Plaintiffs' property has been, and continues to be, damaged by the stormwater runoff and sediment which have been and continue to be discharged from the Legends Subdivision, in that the runoff and sediment have polluted the surface water flowing from the Legends subdivision onto the McMillan farm and have further polluted a water-supply well located on the McMillan farm such that the McMillan Plaintiffs cannot use the well.

49.     Based on the history of violations at the site and numerous violations that have occurred after Plaintiffs' July and August Notices, Defendants' NPDES permit violations are continuing, intermittent, and are likely to recur.

## CLAIMS

### COUNT ONE: FAILURE TO COMPLY WITH THE TERMS OF THE APPLICABLE NPDES PERMIT BY CAUSING OBJECTIONABLE COLOR CONTRAST IN THE RECEIVING STREAMS IN VIOLATION OF THE CLEAN WATER ACT

50.     Paragraphs 1-49 of this Complaint are hereby realleged and incorporated by reference herein.

51.     Section 4.3.2(c) of the TNCGP provides that "the storm water discharge must not cause an objectionable color contrast in the receiving stream."

52.     Defendants have violated TNCGP § 4.3.2(c) and the Act by discharging stormwater from the Legends Subdivision construction site that was sufficiently turbid to cause objectionable color contrast in Murphy Creek and Love Creek on numerous occasions, including, but not limited to, those listed in the July Notice served by Plaintiffs and attached hereto as Exhibit 1 and incorporated by reference herein, as well as the occasions identified in Paragraph

- 17 -

44 above. Violations of TNCGP § 4.3.2(c) have been continuous since March 2009 and are on-going at the time of the filing of this Complaint.

53.     As a result of the acts and omissions of Defendants, Defendants have violated Sections 301(a) and 402 of the Act, 33 U.S.C. §§ 1311(a) and 1342, as well as the Tennessee statutes and rules implementing the Act by repeatedly violating the terms of the TNCGP.

**COUNT TWO: FAILURE TO COMPLY WITH THE TERMS OF THE APPLICABLE NPDES PERMIT BY DISCHARGING SEDIMENTS IN CONCENTRATIONS DETRIMENTAL TO HUMANS, LIVESTOCK, WILDLIFE, PLANT LIFE, OR FISH AND AQUATIC ORGANISMS IN VIOLATION OF THE CLEAN WATER ACT**

54.     Paragraphs 1-53 of this Complaint are hereby realleged and incorporated by reference herein.

55.     Section 4.3.2(d) of the TNCGP provides that the "storm water discharge must result in no materials in concentrations sufficient to be hazardous or otherwise detrimental to humans, livestock, wildlife, plant life, or fish and aquatic life in the receiving stream."

56.     Defendants have violated TNCGP § 4.3.2(d) and the Act by discharging stormwater from the Legends Subdivision construction site that was sufficiently turbid to be detrimental to livestock, fish, and aquatic life in Murphy Creek and Love Creek on numerous occasions, including, but not limited to, those listed in the July Notice served by Plaintiffs and attached hereto as Exhibit 1 and incorporated by reference herein, as well as the occasions identified in Paragraph 44 above. Violations of TNCGP § 4.3.2(d) are continuing.

57.     As a result of the acts and omissions of Defendants, Defendants have violated Sections 301(a) and 402 of the Act, 33 U.S.C. §§ 1311(a) and 1342, as well as the Tennessee statutes and rules implementing the Act by repeatedly violating the terms of the TNCGP.

- 18 -

**COUNT THREE: FAILURE TO COMPLY WITH THE TERMS OF THE APPLICABLE NPDES PERMIT BY FAILING TO DESIGN EROSION PREVENTION AND SEDIMENT CONTROLS TO MINIMIZE THE DISLODGING OF SOIL AND TO RETAIN SEDIMENT ON SITE IN VIOLATION OF THE CLEAN WATER ACT**

58.     Paragraphs 1-57 of this Complaint are hereby realleged and incorporated by reference herein.

59.     Section 3.5.3.1(a) of the TNCGP provides that the "construction-phase erosion prevention controls shall be designed to retain mobilized sediment on site."

60.     Defendants have violated TNCGP § 3.5.3.1(a) and the Act by failing to design erosion prevention controls that retain mobilized sediment on site, as evidenced by the discharge of highly turbid stormwater during even routine rain events. There are numerous shortcomings in the erosion controls designed and implemented by Defendants, including those submitted to TDEC in August 2009 in response to the TDEC's order. The EPSCs as designed focus on perimeter controls and treating the stormwater that reaches the sediment basins with polyacrylamide. Much of the stormwater discharged from the site does not reach the ponds and thus is not treated prior to discharge. In addition, the EPSCs as designed do not include sufficient measures to slow the flow of water downhill through large areas of the steep construction site, resulting in fast-moving water that dislodges large amounts of sediment that are not contained by the perimeter controls. The SWPPPs do not call for a sufficient number of silt fences on portions of the site with very steep slopes as required by the Tennessee Erosion and Sediment Control Handbook.

61.     As described in the July Notice served by Plaintiffs and attached hereto as Exhibit 1, and incorporated by reference herein, this is a continuous violation that began upon commencement of construction. This violation of TNCGP § 3.5.3.1(a) is continuing.

- 19 -

62.     As a result of the acts and omissions of Defendants, Defendants have violated Sections 301(a) and 402 of the Act, 33 U.S.C. §§ 1311(a) and 1342, as well as the Tennessee statutes and rules implementing the Act by repeatedly violating the terms of the TNCGP.

**COUNT FOUR: FAILURE TO COMPLY WITH THE TERMS OF THE APPLICABLE NPDES PERMIT BY FAILING TO SELECT, INSTALL, AND MAINTAIN EROSION PREVENTION AND SEDIMENT CONTROLS IN ACCORDANCE WITH GOOD ENGINEERING PRACTICES AND TO PREVENT RILL AND GULLY FORMATION IN VIOLATION OF THE CLEAN WATER ACT**

63.     Paragraphs 1-62 of this Complaint are hereby realleged and incorporated by reference herein.

64.     Section 3.5.3.1(b) of the TNCGP provides that "[a]ll control measures must be properly selected, installed, and maintained in accordance with the manufacturer's specifications (where applicable) and good engineering practices.  All control measures selected must be able to slow runoff so that rill and gully formation is prevented."

65.     Defendants have violated TNCGP § 3.5.3.1(b) and the Act by failing to properly select, install, and maintain erosion prevention controls, as evidenced by the discharge of highly turbid stormwater during even routine rain events and by the formation of rills and gullies throughout the Legends Subdivision construction site.  As a result, significant amounts of sediment have been mobilized and discharged from the Legends Subdivision construction site. As described in the July Notice served by Plaintiffs and attached hereto as Exhibit 1, and incorporated by reference herein, this is a continuous violation that began upon commencement of construction.  The July Notice also lists specific dates when Plaintiffs have documented violations of TNCGP § 3.5.3.1(b), including those violations listed  in both sections A.2. and A.6. of the July Notice. This violation of TNCGP § 3.5.3.1(b) is continuing.

- 20 -

66.     As a result of the acts and omissions of Defendants, Defendants have violated Sections 301(a) and 402 of the Act, 33 U.S.C. §§ 1311(a) and 1342, as well as the Tennessee statutes and rules implementing the Act by repeatedly violating the terms of the TNCGP.

### COUNT FIVE: FAILURE TO COMPLY WITH THE TERMS OF THE APPLICABLE NPDES PERMIT BY FAILING TO DESCRIBE AND MAINTAIN CONSTRUCTION ENTRANCES TO REDUCE TRACKING OF MUD AND DIRT ONTO PUBLIC ROADS IN VIOLATION OF THE CLEAN WATER ACT

67.     Paragraphs 1-66 of this Complaint are hereby realleged and incorporated by reference herein.

68.     Section 3.5.5(b) of the TNCGP provides that "[o]ff-site vehicle tracking of sediments ... shall be minimized. A stabilized construction access (a point of entrance/exit to a construction site) shall be described and implemented, as needed, to reduce the tracking of mud and dirt onto public roads by construction vehicles."

69.     Defendants have violated TNCGP § 3.5.5(b) and the Act by failing to maintain a stabilized construction entrance at Washington Pike sufficient to prevent the tracking of mud onto public roads.

70.     Defendants have violated TNCGP § 3.5.5(b) and the Act by failing to maintain a stabilized construction entrance on McCampbell Drive sufficient to prevent the tracking of mud onto public roads.

71.     As described in the July Notice served by Plaintiffs and attached hereto as Exhibit 1, and incorporated by reference herein, these are continuous violations that began upon commencement of construction. The July Notice also lists specific dates on which Plaintiffs have documented violations of TNCGP § 3.5.5(b). This violation of TNCGP § 3.5.5(b) is continuing.

- 21 -

72.     As a result of the acts and omissions of Defendants, Defendants have violated Sections 301(a) and 402 of the Act, 33 U.S.C. §§ 1311(a) and 1342, as well as the Tennessee statutes and rules implementing the Act by repeatedly violating the terms of the TNCGP.

**COUNT SIX: FAILURE TO COMPLY WITH THE TERMS OF THE APPLICABLE NPDES PERMIT BY FAILING TO TEMPORARILY STABILIZE INACTIVE AREAS WITHIN FIFTEEN DAYS IN VIOLATION OF THE CLEAN WATER ACT**

73.     Paragraphs 1-72 of this Complaint are hereby realleged and incorporated by reference herein.

74.     Section 3.5.3.2 of the TNCGP provides that "temporary or permanent soil stabilization at the construction site (or a phase of the project) must be completed not later than 15 days after the construction activity in that portion of the site has temporarily or permanently ceased."

75.     Defendants have violated TNCGP § 3.5.3.2 and the Act by failing to stabilize areas of the Legends Subdivision construction site that have not been worked for at least fifteen days. Defendants have violated this requirement on several occasions, including, but not limited to, those listed in the July Notice served by Plaintiffs and attached hereto as Exhibit 1, and incorporated by reference herein. Violations of TNCGP § 3.5.3.2 are continuing or are likely to recur.

76.     As a result of the acts and omissions of Defendants, Defendants have violated Sections 301(a) and 402 of the Act, 33 U.S.C. §§ 1311(a) and 1342, as well as the Tennessee statutes and rules implementing the Act by repeatedly violating the terms of the TNCGP.

- 22 -

**COUNT SEVEN: FAILURE TO COMPLY WITH THE TERMS OF THE APPLICABLE NPDES PERMIT SELF-INSPECTION REQUIREMENTS IN VIOLATION OF THE CLEAN WATER ACT**

77.     Paragraphs 1-76 of this Complaint are hereby realleged and incorporated by reference herein.

78.     Section 3.5.8.2 of the TNCGP imposes several self-inspection requirements that are designed to operate together to ensure that any sediment control problems, including discharges, are identified and addressed. Section 3.5.8.2(a) of the TNCGP requires that these inspections be done at least twice per calendar week, at least 72 hours apart. Section 3.5.8.2(c) requires qualified inspectors to observe "[d]isturbed areas and areas used for storage of materials that are exposed to precipitation...for evidence of, or potential for, pollutants entering the drainage system" as well as "[e]rosion prevention and sediment control measures identified in the SWPPP...to ensure that they are operating correctly." These requirements have been superseded with respect to Sharp and Babelay by the Director's Order and the Agreed Order effective, respectively, June 11, 2009 and September 15, 2009. Part XVII item 4(b) of these Orders require daily self-inspections of EPSCs. The permit provisions remain in place for Hathaway, Legends, and Clear Creek and were effective with respect to Sharp and Babelay prior to being superseded.

79.     Section 3.5.8.2(d) requires qualified inspectors to observe "[o]utfall points...to determine whether erosion prevention and sediment control measures are effective in preventing significant impacts to receiving waters" and "[l]ocations where vehicles enter or exit the site ... for evidence of offsite sediment tracking."

80.     Finally, Section 3.5.8.2(e) requires that "any inadequate control measures or control measures in disrepair" to be fixed "before the next rain event if possible, but in no case

- 23 -

more than 7 days after the need is identified." This requirement has been superseded with respect to Sharp and Babelay by Part XVII item 4(b) of the Director's Order and of the Agreed Order effective, respectively, June 11, 2009 and September 15, 2009.

81.     Defendants have violated TNCGP §§ 3.5.8.2 (c) & (d) and the Act by failing to identify EPSCs at the site that are in disrepair or otherwise not working and by failing to identify highly turbid discharges from outfalls at the site during significant rain events. As a result, failed EPSCs are not fixed in a timely manner, improved or additional EPSCs are not implemented, and discharges from the site are continuing to pollute Love Creek, Murphy Creek, and downstream waters.

82.     Clear Creek has secured the services of GEOServices, LLC ("GEOS") to conduct inspections of the driveway construction. GEOS has conducted inspections on 6/23/09, 6/25/09, 6/30/09, 7/3/09, 7/6/09, 7/10/09, 7/14/09, 7/17/09, 7/21/09, 7/24/09, 7/28/09, 7/31/09, 8/5/09, and 8/10/09. These reports were received by TDEC's Knoxville Environmental Field Office on 7/22/09 and 8/13/09.

83.     Hathaway has conducted nearly daily field inspections of best management practices for the apartment construction area beginning 3/23/09. Reports of these inspections through 8/6/07 were received by TDEC's Knoxville Environmental Field Office on 8/13/09.

84.     Hathaway also secured the services of GEOS to conduct inspections of the apartment construction area. GEOS has conducted these inspections on 7/24/09, 7/28/09, 7/31/09, 8/5/09, and 8/10/09, the reports of which were later submitted to TDEC's Knoxville Environmental Field Office.

85.     Additional self-inspection reports were submitted to TDEC's Knoxville Environmental Field Office on the form provided in the TNCGP. Sharp submitted reports on

- 24 -

these forms on 5/8/09, with inspections beginning on 3/25/09 and ending 5/8/09. Clear Creek submitted reports on these forms on 7/14/09, with inspections beginning on 4/9/09 and ending 6/23/09. On August 13, 2009, Clear Creek resubmitted this form with additional monthly erosion control report summaries. Hathaway submitted reports on these forms on 7/15/09, with inspections beginning on 4/3/09 and ending on 7/17/09.

86. Many of these inspection reports have failed to identify EPSCs described in the SWPPP that are not operating correctly in violation of § 3.5.8.2(c). Defendants have violated this provision on numerous occasions, including, but not limited to, those listed in the July Notice served by Plaintiffs and attached hereto as Exhibit 1, and incorporated by reference herein. Violations of TNCGP §§ 3.5.8.2(c) are continuing.

87. Often, when inspection reports do identify inadequate control measures or control measures in disrepair, later inspection reports document that they have not been replaced, modified, or repaired as necessary before the next rain event or within seven days.

88. Other than Hathaway's self-inspections on 5/11/09 (the date of the detention pond breach) and Clear Creek's narrative report for 5/11/09 and 6/4/09, none of these self-inspection reports identify problems with discharges from outfalls at the site that may cause significant impacts to the receiving waters in violation of TNCGP § 3.5.8.2(d). Self-inspections often do not occur during or shortly after rain events, when problems at outfalls are most likely to be identified. Moreover, even when self-inspections do occur when it rains, TCWN inspections often indicate significant sediment discharges from the site that are not identified in these reports. Defendants have violated this provision on numerous occasions, including, but not limited to, those listed in the July Notice served by Plaintiffs and attached hereto as Exhibit 1,

- 25 -

and incorporated by reference herein. Violations of TNCGP § 3.5.8.2(d) are continuing or likely to recur.

89. As a result of the acts and omissions of Defendants, Defendants have violated Sections 301(a) and 402 of the Act, 33 U.S.C. §§ 1311(a) and 1342, as well as the Tennessee statutes and rules implementing the Act by repeatedly violating the terms of the TNCGP.

## COUNT EIGHT: FAILURE TO COMPLY WITH THE INSPECTION REQUIREMENTS OF THE AGREED ORDER IN VIOLATION OF THE CLEAN WATER ACT

90. Paragraphs 1-89 of this Complaint are hereby realleged and incorporated by reference herein.

91. The Agreed Order imposes several additional inspection requirements on Babelay beyond those required by the TNCGP, which requirements are identical to those contained in the Director's Order which preceded it.

92. Part XVIII item 4(a) of the Agreed Order and of the preceding Director's Order requires weekly site inspections by a professional engineer, licensed in the State of Tennessee, to "evaluate the overall effectiveness of the SWPPP."

93. Part XVIII item 4(b) of the Agreed Order and of the preceding Director's Order requires daily inspections of EPSC measures by qualified personnel, and that "[b]ased on the results of the inspection, any EPSC measures identified as in need of maintenance must be replaced or repaired as necessary, before the next rain event if possible, but in no case more than SEVEN (7) DAYS after the need is identified."

94. Part XVIII item 4(c) of the Agreed Order and of the preceding Director's Order requires the inspections to be documented and submitted to TDEC's Knoxville Environmental Field Office on a monthly basis.

- 26 -

95.     The Agreed Order and the preceding Director's Order are "order[s] issued by the ... State with respect to [an effluent] standard or limitation," 33 U.S.C. § 1365(a)(1)(B), and are thus subject to enforcement through a citizen suit.

96.     Jeff Beckett, a professional engineer licensed in the State of Tennessee, conducted site inspections on 7/31/09 and 8/31/09, the written reports of which were later submitted to TDEC's Knoxville Environmental Field Office.

97.     Inspections by Mr. Beckett have occurred monthly, not weekly. This failure to conduct inspections is a violation of Part XVIII item 4(a) of the Agreed Order and of the preceding Director's Order for each day of each week when an inspection has not occurred since 6/11/09.. These violations are continuing.

98.     As a result of the acts and omissions of Babelay, Babelay has violated Sections 301(a) and 402 of the Act, 33 U.S.C. §§ 1311(a) and 1342, as well as the Tennessee statutes and rules implementing the Act by repeatedly violating the terms of the Agreed Order and of the preceding Director's Order.

### COUNT NINE: FAILURE TO COMPLY WITH THE APPLICABLE NPDES PERMIT REQUIREMENTS BY FAILING TO MODIFY AND UPDATE THE SWPPPS IN VIOLATION OF THE CLEAN WATER ACT

99.     Paragraphs 1-98 of this Complaint are hereby realleged and incorporated by reference herein.

100.    The TNCGP requires dischargers to update their SWPPP when there is a "change in the scope of the project," when the "SWPPP is proving ineffective in eliminating or significantly minimizing pollutants," and to identify any new operator in violation of TNCGP § 3.4.1. Based on TCWN's review of TDEC and Knox County files, the SWPPPs have not been updated to address any of these changed conditions that have occurred on the site. As evidenced

- 27 -

by ongoing violations of water quality standards, the EPSCs called for in even the revised SWPPPs are insufficient. The SWPPPs misidentify which receiving streams are water-quality limited for siltation. Finally, there are now at least three construction contractors on site, but the SWPPPs have not been updated accordingly.

101. The SWPPPs do not address measures to control post-construction stormwater discharges in violation of TNCGP § 3.5.4. As the SWPPPs acknowledge, the site discharges to sediment-limited receiving waters. Accordingly, the SWPPPs must address what additional controls will be installed, implemented and maintained to prevent additional sediment from entering these watersheds. There is no discussion in the SWPPPs of whether velocity dissipation devices will be used to control and reduce the flow rate of stormwater on and from the site to acceptable levels as described in the permit.

102. The SWPPPs do not include a description of construction and waste materials to be stored on the site in violation of TNCGP § 3.5.5(d). Such a list might include, in addition to soil, specific paints and sundry painting supplies; building materials including but not limited to, woods, nails, form oils, roofing materials, and exterior products; plumbing supplies including solvents, glues, metals (i.e. copper, brass, steel, galvanized), plastics, PVC materials, solder and similar products; landscaping materials such as mulch, plants, trees, shrubs, soils and associated materials; as well as other materials that might be stored in such a manner as to come in contact with stormwater as it falls or moves across the ground. Any of these materials may potentially cause pollutants to be released in stormwater discharges from the site. Neither SWPPP describes the controls that will be used to reduce these pollutants from the stormwater discharges from the site.

103.     The SWPPPs do not describe procedures that ensure that vegetation, erosion and sediment control measures, buffer zones, and other protective measures identified in the plan are kept in good working and effective operating condition in violation of TNCGP § 3.5.7.  Instead, there is only a bare statement that the erosion and sediment controls will be properly maintained without any description of how this statement will be implemented.

104.     The SWPPPs do not address non-stormwater discharges other than a simple statement that concrete trucks are not allowed to wash out on site in violation of § 3.5.9.  This is inadequate.  Further, the SWPPPs do not address other sources of non-stormwater discharges such as equipment washing, landscape watering, irrigation, facility washdowns, street washing, equipment storage, fuel storage, equipment repairs, and other similar activities.

105.     As a result of the acts and omissions of Defendants, Defendants have violated Sections 301(a) and 402 of the Act, 33 U.S.C. §§ 1311(a) and 1342, as well as the Tennessee statutes and rules implementing the Act by repeatedly violating the terms of the TNCGP.

**COUNT TEN: FAILURE TO COMPLY WITH THE TERMS OF THE APPLICABLE NPDES PERMIT BY FAILING TO REMOVE FLOCCULANT USED FOR SEDIMENT CONTROL PRIOR TO DISCHARGE IN VIOLATION OF THE CLEAN WATER ACT**

106.     Paragraphs 1-105 of this Complaint are hereby realleged and incorporated by reference herein.

107.     Section 3.5.3.1(f) of the TNCGP provides that erosion prevention and sediment controls must be "removed or otherwise prevented from becoming a pollutant source for storm water discharges."

108.     Defendants have violated TNCGP § 3.5.3.1(f) by failing to remove polyacrylamide, a flocculant used for sediment control, prior to discharging stormwater to Murphy Creek, Love Creek, and their tributaries.  Polyacrylamide is a pollutant, and is toxic to

- 29 -

aquatic organisms. The August Notice served by Plaintiffs and attached hereto as Exhibit 2 and incorporated by reference herein lists specific dates on which Plaintiffs have documented violations of TNCGP § 3.5.3.1(f). This violation is ongoing.

109. As a result of the acts and omissions of Defendants, Defendants have violated Sections 301(a) and 402 of the Act, 33 U.S.C. §§ 1311(a) and 1342, as well as the Tennessee statutes and rules implementing the Act by repeatedly violating the terms of the TNCGP.

## COUNT ELEVEN: FAILURE TO COMPLY WITH THE TERMS OF THE APPLICABLE NPDES PERMIT BY DISCHARGING STORMWATER THAT CONTAINS FLOATING OILS IN VIOLATION OF THE CLEAN WATER ACT

110. Paragraphs 1-109 of this Complaint are hereby realleged and incorporated by reference herein.

111. Section 4.3.2(b) of the TNCGP prohibits the discharge of storm water that contains distinctly visible floating oils.

112. Defendants have violated TNCGP § 4.3.2(b) by discharging stormwater containing distinctly visible floating oil to Murphy Creek, Love Creek, and their tributaries. The August Notice served by Plaintiffs and attached hereto as Exhibit 2 and incorporated by reference herein lists specific dates on which Plaintiffs have documented violations of TNCGP § 4.3.2(b). This violation is ongoing.

113. As a result of the acts and omissions of Defendants, Defendants have violated Sections 301(a) and 402 of the Act, 33 U.S.C. §§ 1311(a) and 1342, as well as the Tennessee statutes and rules implementing the Act by repeatedly violating the terms of the TNCGP.

## COUNT TWELVE: NUISANCE

114. The allegations of paragraphs 1-113 are hereby realleged and incorporated herein by reference.

- 30 -

115. Defendants' unreasonable use of the Legends Subdivision property resulting in the discharge of substantial amounts of sediment flowing onto the McMillan farm and into the groundwater aquifer has substantially and unreasonably interfered with the McMillans' use and enjoyment of their property.

116. Any unauthorized discharge is a public nuisance under the Tennessee Water Quality Control Act of 1977, Tenn. Code Ann. § 69-3-114. Defendants' discharges in violation of the TNCGP and in violation of the Agreed Order constitute a public nuisance.

117. As Murphy Creek and Whites Creek both run across the McMillan farm and the McMillans' cattle drink from the water in those creeks, the McMillan Plaintiffs have suffered a greater degree of damages as a result of Defendants' public nuisance than that suffered by the general public, and at greater cost to remediate.

118. Defendants' discharges of sediment-laden stormwater into the local groundwater aquifer also constitutes a private nuisance in that defendants have caused substantial and unreasonable interference with McMillans' use and enjoyment of their property and substantial and unreasonable interference with the McMillan Plaintiffs' use of their well as the well water is regularly contaminated by Defendants' discharges.

119. Defendants' creation and maintenance of a nuisance has caused the McMillan Plaintiffs to suffer loss of use, lost rental value and diminution in the value of their property for which Defendants are liable in damages.

120. Defendants are also liable for the loss of quality of life, aggravation, and inconvenience suffered by the McMillan Plaintiffs as a result of the nuisance.

- 31 -

## COUNT THIRTEEN: TRESPASS

121.   The allegations of paragraphs 1-120 are hereby realleged and incorporated herein by reference.

122.   Since commencing construction and land disturbance activities in March 2009, Defendants have discharged sediment and other pollutants which have crossed onto, entered into and polluted the McMillan farm property via Murphy Creek and a well located thereon through the underground aquifer without Plaintiffs' permission.

123.   Defendants intentionally discharged sediment and other pollutants to a location where it knew or should have known that it was substantially certain that the discharge would result in trespass of sediment and other pollutants onto the property of McMillans and the discharge was of the nature that would interfere with Plaintiffs' use of the surface and groundwater.

124.   Defendants' trespass has caused the McMillans to suffer loss of use, lost rental value and diminution in the value of their property for which Defendants are liable in damages.

125.   Defendants are also liable for the loss of quality of life, aggravation, and inconvenience suffered by Plaintiffs as a result of the trespass.

## COUNT FOURTEEN: NEGLIGENCE

126.   The allegations of paragraphs 1-125 are hereby realleged and incorporated herein by reference.

127.   Defendants have violated their duty of care to the McMillans by failing to prevent the discharge of sediment and other pollutants from the Legends subdivision site from entering

Murphy Creek and the underground aquifer, causing these pollutants to enter onto the McMillan farm and pollute a well located thereon.

128.    The Defendants knew or should have known that it was substantially certain that sediment and other pollutants leaving the Legends site would result in damage to the McMillan farm, but did not take necessary action to prevent the off-site discharge of sediment and other pollutants.

129.    Defendants' negligence is the proximate cause of the McMillans' damages.

130.    Defendants' negligence has caused the McMillans to suffer loss of use, lost rental value and diminution in the value of their property for which Defendants are liable in damages.

131.    Defendants are also liable for the loss of quality of life, aggravation, and inconvenience suffered by Plaintiffs as a result of the negligence.

### COUNT FIFTEEN: NEGLIGENCE PER SE

132.    The allegations of paragraphs 1-131 are hereby realleged and incorporated herein by reference.

133.    The Clean Water Act and the Tennessee Water Quality Control Act each create a duty of care for developers of property and those engaging in land disturbance activities, such as Defendant.

134.    The Clean Water Act and The Tennessee Water Quality Control Act were enacted to protect a class of persons which includes the McMillan Plaintiffs.

135.    Defendants have violated the Tennessee Water Quality Control Act and the Clean Water Act. These violations constitute negligence per se on the part of Defendants.

136.    The damages to the McMillan Plaintiffs and the McMillan farm are of the types that are prohibited by the Clean Water Act and the Tennessee Water Quality Control Act.

- 33 -

137. Defendants' violation of the aforementioned statutes proximately caused the McMillan Plaintiffs' damages.

138. Defendants' violations have caused the McMillan Plaintiffs to suffer loss of use, lost rental value and diminution in the value of their property for which Defendants are liable in damages.

139. Defendants are also liable for the loss of quality of life, aggravation, and inconvenience suffered by the McMillan Plaintiffs as a result of the negligence.

### RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

a. Declare that the Defendants have violated and continue to violate the Clean Water Act;

b. Enjoin Defendants from continuing with land disturbance and/or construction activity at the Legends Subdivision in such a manner as will result in further violations of Defendants' NPDES Permit for the site;

c. Order Defendants to comply with all terms and conditions of the TNCGP;

d. Enjoin Defendants from any further discharge of sediment or other pollutants into Murphy Creek, Love Creek and their tributaries.

e. Order Defendants to pay civil penalties of up to Thirty-Seven Thousand Five Hundred dollars ($37,500) per day for each day of each violation of Defendants' NPDES permit, pursuant to Sections 309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d), 1365(a), and 40 C.F.R. § 19.4, including those listed in this Complaint and any violations committed subsequent to those listed in this Complaint or discovered during the course of this litigation;

- 34 -

f.  Order the Defendants to take such steps as are necessary and proper to remedy the harm caused by their violations of the Clean Water Act;

g.  Enjoin Defendants from the maintenance of a nuisance and from continuing to cause sediment and other pollutants to trespass onto the McMillan property;

h.  Award Plaintiffs their costs (including reasonable attorney and expert witness fees) as authorized by Section 505(d) of the Act, 33 U.S.C. § 1365(d);

i.  Award the McMillan Plaintiffs damages in an amount sufficient to restore the McMillan farm to its condition prior to Defendants' trespass upon the McMillan farm and prior to the creation of a nuisance by Defendants;

j.  Award the McMillan Plaintiffs damages in an amount sufficient to compensate them for the loss of use and enjoyment of the McMillan farm due the creation of a nuisance, due to the trespass by Defendants, and due to Defendants' negligence; and

k.  Grant Plaintiffs a trial by jury for their common law damages claims at a trial of this matter; and

l.  Award such other relief as the Court deems just and appropriate.

Respectfully submitted, this the 27th day of October, 2009.

/s/ Stephanie D. Matheny

Stephanie D. Matheny (BPR#027783)
Tennessee Clean Water Network
P.O. Box 1521
Knoxville, TN 37901
Telephone: (865)522-7007 x 102
stephanie@tcwn.org

Gary A. Davis (BPR # 009766)
Rebecca C. (Kaman) Vernetti (BPR #0022870)
James S. Whitlock (NC Bar #34304)
(Admission Requested *Pro Hac Vice*)
Gary A. Davis & Associates
P.O. Box 649
61 North Andrews Avenue
Hot Springs, N.C. 28743
Telephone: (828)622-0044
gadavis@enviroattorney.com
bvernetti@enviroattorney.com
jwhitlock@enviroattorney.com

- 36 -

## Certificate of Service

I hereby certify that I have served a true and correct copy of the foregoing First Amended
Complaint by certified mail, return receipt requested, per Fed. R. Civ. P. 4(h)(1)(A) and Tenn. R.
Civ. P. 4.04(10) upon the following, on this, the 27th day of October, 2009:

Stephanie D. Matheny (BPR#027783)
Staff Attorney
Tennessee Clean Water Network
P.O. Box 1521
Knoxville, TN 37901
Telephone: (865)522-7007 x 102
stephanie@tcwn.org

The Legends at Washington Pike, LLC      Tracking # 7008-0150-0001-2302-5305
Virginia L. Couch, Registered Agent
8351 E. Walker Springs, Suite 303
Knoxville, TN 37923

Clear Creek Construction, LLC            Tracking # 7008-0150-0001-2302-5282
Virginia L. Couch, Registered Agent
8351 E. Walker Springs, Suite 303
Knoxville, TN 37923

James Lee Sharp, Registered Agent        Tracking # 7008-0150-0001-2302-5268
Sharp Contracting, Inc.
235 S. Old Glory Road
Maryville, TN 37801

Babelay Farm, LLC                        Tracking # 7008-0150-0001-2302-5299
c/o Tennessee Dept. of State
Division of Business Services
Summons Section
312 Eighth Avenue. 6th Floor
Nashville, TN 37243

Hathaway Construction Co.                Tracking # 7008-0150-0001-2302-5275
Darlene T. Marsh, Registered Agent
700 Two American Center
3102 W. End Ave.
Nashville, TN 37203

Exhibit 1



Tel: (865) 522-7007
Fax: (865) 525-4988

info@tcwn.org
www.tcwn.org

P.O. Box 1521
Knoxville, Tennessee 37901

123A South Gay Street
Knoxville, TN 37902

July 29, 2009

Victor Jernigan
108 Stekoia Lane, Suite 103
Knoxville, TN 37912

Tracking #7008-0500-0000-7803-0202

Jeff McBride
Babelay Farm, LLC and Babelay Farm II, LLC
108 Stekoia Lane, Suite 103
Knoxville, TN 37912

Tracking #7008-0500-0000-7803-1889

Jeff McBride, President
Clear Creek Construction, LLC
108 Stekoia Lane, Suite 103
Knoxville, TN 37912

Tracking #7008-0500-0000-7803-1896

James Lee Sharp, Registered Agent
Sharp Contracting, Inc.
235 South Old Glory Road
Maryville, TN 37801

Tracking #7008-0500-0000-7803-1902

Managing Agent
The Legends at Washington Pike, LLC
3085 Vineville Ave.
Macon, GA 31204

Tracking #7008-0500-0000-7803-1919

David S. Hathaway, Chairman
Hathaway Construction Co., Inc.
5901-C Peachtree
Dunwoody Road, Suite 495
Atlanta, GA 30328

Tracking #7008-0500-0000-7803-1926

**By Certified Mail – Return Receipt Requested**

**RE:** **Legends at Washington Pike Subdivision**
**Notice of Violation Pursuant to Section 505(b)(1)(A) of the Federal Clean Water**
**Act, 33 U.S.C. § 1365(b)(1)(A)**

Dear Sirs:

A Member of
COMMUNITY
SHARES

Exhibit 1

This letter is to notify Victor Jernigan, Babelay Farm, LLC, Babelay Farm II, LLC, Clear Creek Construction, LLC, Sharp Contracting, Inc., Legends at Washington Pike, LLC, and Hathaway Construction Co., Inc., as well as the state and federal agencies listed below, of ongoing violations of the Clean Water Act ("CWA") at the Legends at Washington Pike Subdivision located between Washington Pike and McCampbell Drive in northeast Knox County, Tennessee. The Tennessee Clean Water Network ("TCWN"), Charles S. McMillan, and James McMillan intend to file suit in the United States District Court for the Eastern District of Tennessee pursuant to Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), in sixty days.

## LOCATION OF VIOLATIONS

The Legends at Washington Pike Subdivision is an approximately 112.6 acre multi-phase residential development. This notice letter covers ongoing construction-related stormwater violations throughout the entire Legends at Washington Pike Subdivision, including all lots owned by any of the above-listed parties.

The site discharges stormwater from its construction entrance on Washington Pike to Love Creek. For the purpose of this letter, TCWN has designated this construction entrance as Outfall 1. Love Creek is listed under Section 303(d) of the CWA, 33 U.S.C. § 1311(d), as impaired for siltation, a condition caused primarily by land development.[1] Love Creek is a tributary of the Holston River.

The site also discharges stormwater on the McCampbell Drive side of the property. There are two streams identified on the northwestern portion of the property, both of which are unnamed tributaries to Murphy Creek.[2] For the purpose of this letter, TCWN has designated the discharge from the eastern stream to Murphy Creek as Outfall 2, and has designated the discharge from the western construction entrance on McCampbell Drive to Murphy Creek as Outfall 3. Murphy Creek is a tributary of Whites Creek. Whites Creek is 303(d) listed for habitat impairment and is subject to the Fort Loudoun Lake Watershed[3] total maximum daily load ("TMDL") for sediment. Whites Creek is a tributary of First Creek. First Creek is 303(d) listed as impaired by siltation and is also subject to the Fort Loudoun Lake TMDL.

TCWN is aware of four additional outfalls from which the Legends construction site discharges stormwater:
1. Oak Grove AME Zion Church at 5657 Washington Pike (Love Creek)
2. Wyngate Subdivision detention pond behind Aylesbury Drive (Murphy Creek)
3. Steeple Shadow Condominiums on Steeple Shadow Way (Love Creek)
4. Construction entrance at the northeastern corner of the Legends at Washington Pike Subdivision at McCampbell Drive.

---

[1] Babelay Farm, LLC erroneously stated in its SWPPP that Love Creek is not 303(d) listed for siltation (SWPPP for The Legends at Washington Pike Driveway Improvements, March 2009, at § 1.1.1).

[2] Babelay Farm, LLC referred to these as unnamed tributaries to Whites Creek in its correspondence with permitting officials. Accordingly, TDEC documents also refer to these as tributaries to Whites Creek.

[3] Fort Loudoun Lake is a section of the Tennessee River in the Knoxville area.

2

2

Exhibit 1

## DESCRIPTION OF VIOLATIONS

Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a point source to waters of the United States except in compliance with, among other conditions, a National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342. The entire Legends at Washington Pike Subdivision construction site is a point source. The sediment and other materials contained in stormwater runoff from the site are pollutants. Murphy Creek, Love Creek, Whites Creek and their tributaries are waters of the United States.

Pursuant to its delegated authority under Section 402(b) of the CWA, 33 U.S.C. § 1342(b), the Tennessee Department of Environment and Conservation ("TDEC") issued the Tennessee General NPDES Permit for Discharges of Stormwater Associated with Construction Activities ("TNCGP"), Permit No. TNR100000, for qualified construction sites of one acre or more. Babelay Farm, LLC obtained coverage for this site under the TNCGP under tracking numbers TNR133211 and TNR130217. TNR133211 covers 5.49 acres of driveway improvements at Washington Pike. TNR130217 appears to cover the balance of the subdivision.

Section 6.1.1 of the TNCGP provides that "[t]he permittee must comply with all conditions of this permit. Any permit noncompliance constitutes a violation of the Tennessee Water Quality Control Act." Failure to comply with any condition of the TNCGP is a violation of the CWA. The following narrative section describes the nature of these violations in detail. **These violations are ongoing and are likely to continue upon filing of this lawsuit.**

A.   **FAILURE TO PROPERLY DESIGN AND MAINTAIN EROSION PREVENTION AND SEDIMENT CONTROLS**

1.   **Failure to design erosion prevention and sediment controls to minimize the dislodging of soil and to retain sediment on site (§ 3.5.3.1(a))**

The erosion prevention and sediment controls ("EPSCs") proposed in the stormwater pollution prevention plans ("SWPPPs") submitted for this site are not adequately designed. The inadequacy of the EPSCs is evidenced by the continued release of significant volumes of sediment from the site during rain events. This failure to properly design EPSCs is a continuous violation that began upon commencement of construction-related clearing activities.[4]

2.   **Failure to select, install and maintain erosion prevention and sediment controls in accordance with good engineering practices and to prevent rill and gully formation (§ 3.5.3.1(b))**

The developers and contractors at the Legends construction site do not maintain silt fences in accordance with good engineering practices, and do not install sufficient silt

---

[4] Knox County clearing and grading permits for the site were issued on March 31, 2009, so this violation began, at the latest, on that date. However, clearing at the site began earlier than that. The Legends developers and contractors have information sufficient to determine the actual date on which clearing commenced.

Exhibit 1

5/7/09
5/11/09
5/12/09
5/13/09
5/15/09
5/18/09
5/20/09
5/21/09
5/22/09
5/26/09
5/28/09
5/29/09
6/1/09
6/2/09

6. **Failure to describe and maintain construction entrances to reduce tracking of mud and dirt onto public roads (§ 3.5.5(b))**

The site has at least three construction entrances, two on McCampbell Drive and one on Washington Pike.[6] During rain events, the entrances allow the discharge of pollutants to waters of the United States because they are not properly constructed and maintained. The SWPPPs state that the Washington Pike entrance will be constructed, but do not include a geotextile liner under the gravel as required by the Tennessee Erosion and Sediment Control Handbook. On at least the following dates, mud has been tracked to public roads in violation of § 3.5.5(b):

3/11/09 (Outfall 3)
3/13/09 (Outfall 3)
3/18/09 (Outfall 3)
4/7/09 (Outfall 1)
4/8/09 (Outfall 1)
4/26/09 (Outfall 3)
5/8/09 (Outfall 3)
5/11/09 (Outfall 3)
5/24/09 (Outfall 3)
5/26/09 (Outfall 3)
6/12/09 (Outfall 3)

In addition, on at least the following dates, the large volume of sediment-laden water discharged from the construction entrances also indicates that the Legends developers and contractors are failing to properly maintain their EPSCs in violation of § 3.5.3.1(b) in addition to failing to maintain a stabilized construction entrance per § 3.5.5(b):

3/14/09 (Outfall 3)

---

[6] The SWPPPs identify only the construction entrance on Washington Pike.

Exhibit 1

3/27/09 (Outfall 3)
4/10/09 (Outfall 1)
4/10/09 (Outfall 3)
5/1/09 (Outfall 3)
5/3/09 (Outfall 3)
5/9/09 (Outfall 1)
5/9/09 (Outfall 3)
5/15/09 (Outfall 1)
5/15/09 (Outfall 3)
5/25/09 (Outfall 1)
5/25/09 (Outfall 3)
6/3/09 (Outfall 1)
6/3/09 (Outfall 3)
6/4/09 (Outfall 1)
6/4/09 (Outfall 3)
6/10/09 (Outfall 1)
6/10/09 (Outfall 3)
6/11/09 (Outfall 3)
6/21/09 (Outfall 1)
6/21/09 (Outfall 3)
6/22//09 (Outfall 3)
6/28/09 (Outfall 3)
7/9/09 (Outfall 3)
7/13/09 (Outfall 1)
7/13/09 (Outfall 3)
7/26/09 (Outfall 1)

7. **Failure to comply with local erosion prevention and sediment control measures (§ 3.5.6)**

In addition to the specific provisions of the TNCGP, the Legends developers and contractors must also comply with all conditions of the Knox County Stormwater Management Ordinance (Ordinance O-07-8-101, § 1, September 24, 2007). Knox County has noted several violations of its ordinance in Notices of Violation issued on May 11, 2009 and May 13, 2009 and in its inspection reports. These include violations of Knox County Ordinance §§ 2.2 (SWPPP does not adequately reflect the current site conditions, at least from 5/7/09 to 5/26/09), 5.1 (failure to temporarily stabilize, on 5/7/09, 5/11/09, 5/12/09, 5/13/09, 5/15/09, 5/18/09, 5/20/09, 5/21/09, 5/22/09, 5/26/09, 5/28/09, 5/29/09, 6/1/09, 6/2/09), 7.1 (failure to install sediment basins according to approved design plans, at least from 5/7/09 to 5/26/09), 7.2 (failure to control the discharge of muddy water, on 5/11/09).[7]

---

[7] Some of these violations are identical to violations of other TNCGP sections. Identical violations of Knox County and other TNCGP would be treated as a single violation for each day.

6

Exhibit 1

**B.      CAUSING OR CONTRIBUTING TO WATER QUALITY VIOLATIONS**

Section 4.3.1 of the TNCGP provides that any discharge that would result in a violation of state water quality standards constitutes a permit violation. These water quality violations are particularly serious because they demonstrate that failure to properly implement EPSCs at the Legends construction site has resulted in harm to the environment.

1.  **4.3.2(c) – The storm water discharge must not cause an objectionable color contrast in the receiving stream.**

    Discharges from the Legends construction site routinely cause objectionable color contrast at Outfalls 2 and 3 to Murphy Creek. TCWN has documented violations of this parameter on at least the following dates:

    3/14/09 (Outfall 3)
    3/28/09 (Outfall 3)
    4/1/09 (Outfall 3)
    4/3/09 (Outfall 3)
    4/20/09 (Outfall 3)
    5/3/09 (Outfall 3)
    5/4/09 (Outfall 2)
    5/5/09 (Outfall 2)
    5/6/09 (Outfall 2)
    5/7/09 (Outfall 2)
    5/9/09 (Outfall 3)
    5/10/09 (Outfall 2)
    5/11/09 (Outfall 2)
    5/12/09 (Outfall 2)
    5/15/09 (Outfall 2)
    5/16/09 (Outfall 2)
    5/17/09 (Outfall 2)
    5/25/09 (Outfall 2)
    5/18/09 (Outfall 2)
    6/3/09 (Outfall 2)
    6/3/09 (Outfall 3)
    6/4/09 (Outfall 2)
    6/5/09 (Outfall 2)
    6/6/09 (Outfall 2)
    6/11/09 (Outfall 2)
    6/16/09 (Outfall 2)
    6/17/09 (Outfall 2)
    6/21/09 (Outfall 3)
    6/22/09 (Outfall 3)
    6/28/09 (Outfall 3)
    7/9/09 (Outfall 2)

7

Exhibit 1

7/9/09 (Outfall 3)
7/12/09 (Outfall 2)
7/12/09 (Outfall 3)
7/13/09 (Outfall 2)
7/15/09 (Outfall 2)
7/15/09 (Outfall 3)
7/26/09 (Outfall 2)
7/27/09 (Outfall 2)

In addition, TCWN documented objectionable color contrast from Outfall 1 to Love Creek on 6/21/09. TCWN believes that there are additional violations at this location, but has not documented them because of the difficulty in accessing the site.

2. **Discharging sediments in concentrations sufficient to be hazardous or otherwise detrimental to humans, livestock, wildlife, plant life, or fish and aquatic life in the receiving stream (§ 4.3.2(d))**

During significant rain events, the Legends site discharges substantial concentrations of sediment, causing very high turbidity, at Outfalls 2 and 3 to Murphy Creek and at Outfall 1 to Love Creek. This turbidity is detrimental to livestock, fish and aquatic organisms. TCWN has tested samples of the Legends discharges, and found turbidity levels ranging up to 18,600 NTU. By comparison, the United States Environmental Protection Agency's proposed numeric effluent guideline for stormwater discharges is 13 NTU. On other occasions, TCWN has photographs tracking sediment discharged from the Legends construction site through Outfalls 2 & 3 to Murphy Creek and then to Whites Creek. The Legends construction site has discharged pollutants in violation of this section on at least the following dates:

4/20/09 (Outfall 3 – 18,600 NTU)
5/3/09 (Outfall 2 – 1,230 NTU)
5/3/09 (Outfall 3 – 1,650 NTU)
5/8/09 (Outfall 2)
5/8/09 (Outfall 3)
5/11/09 (Outfall 2 – 700 NTU)
5/15/09 (Outfall 2)
5/15/09 (Outfall 3)
6/4/09 (Outfall 3)
6/10/09 (Outfall 2 – 4,300 NTU)
6/16/09 (Outfall 2 – 450 NTU)
6/28/09 (Outfall 2 – 400 NTU)
6/28/09 (Outfall 3 – 700 NTU)
7/9/09 (Outfall 2 – 450 NTU)
7/9/09 (Outfall 3 – 1,400 NTU)
7/12/09 (Outfall 2)
7/12/09 (Outfall 3)
7/15/09 (Outfall 2 – 140 NTU)

8

Exhibit 1

7/15/09 (Outfall 3 – 550 NTU)
7/15/09 (Outfall 1 – 210 NTU)

## C. FAILURE TO PREPARE AND UPDATE STORMWATER POLLUTION PREVENTION PLANS IN CONFORMANCE WITH THE TNCGP

The TNCGP establishes minimum requirements for stormwater pollution prevention plans. These requirements are intended to ensure that permittees have adequately considered and planned for the erosion and sediment controls that will be implemented onsite. Pursuant to § 3.1, SWPPPs must be prepared in accordance with good engineering practices and the Tennessee Erosion and Sediment Control Handbook. The SWPPPs prepared for the Legends at Washington Pike Subdivision are grossly inadequate and fail to conform to permit requirements. All SWPPP violations began on the date that construction commenced (see footnote 4), and are continuous.

1. **Failure to modify and update the SWPPP (§ 3.4.1)**

   The TNCGP requires dischargers to update their SWPPP when there is a "change in the scope of the project," when the "SWPPP is proving ineffective in eliminating or significantly minimizing pollutants," and to identify any new operator. Based on TCWN's review of TDEC and Knox County files, the SWPPPs have not been updated to address any of these changed conditions that have occurred on the site. First, the scope of the project has changed since the time that the 2005 SWPPP was submitted for the former McCampbell Farms Subdivision, but the public files do not indicate that the SWPPP for this area (which appears to cover everything but the 5.49 acre roadway improvements) has been updated. Second, as noted in TDEC Director's No. 09-0073 dated June 11, 2009 and evidenced by ongoing violations of water quality standards, there are likely inappropriate EPSCs on site. Finally, ownership of portions of the site has changed hands and there are now at least three construction contractors on site, but the SWPPPs have not been updated accordingly.

2. **Failure of the SWPPP for TNR130217 to describe structural practices to divert flows from exposed soils, store flows or otherwise limit runoff and discharge of pollutants from exposed areas of the site. (§ 3.5.3)**

   The McCampbell Farms Subdivision SWPPP submitted by Babelay Farm, LLC in January 2005 (TNR130217) does not describe the structural practices to divert flows from exposed areas or otherwise limit discharge of pollutants from the exposed areas of the site. There is no indication of Babelay Farm, LLC's plans to use diversion dikes, sediment traps, or other structural controls.

3. **Failure of the SWPPPs to describe measures that will be installed during the construction process to control pollutants in storm water discharges that will occur after construction operations have been completed (§ 3.5.4)**

   The SWPPPs do not address measures to control post-construction stormwater discharges. As the SWPPPs acknowledge, the site discharges to sediment-limited

9

Exhibit 1

receiving waters. Accordingly, the SWPPPs must address what additional controls will be installed, implemented and maintained to prevent additional sediment from entering these watersheds. There is no discussion in the SWPPPs of whether velocity dissipation devices will be used to control and reduce the flow rate of stormwater on and from the site to acceptable levels as described in the permit.

4. **Failure of the SWPPPs to include a description of construction and waste materials expected to be stored on-site with updates as appropriate (§3.5.5(d))**

The SWPPPs do not include a description of construction and waste materials to be stored on the site. Such a list might include, in addition to soil, specific paints and sundry painting supplies; building materials including but not limited to, woods, nails, form oils, roofing materials, and exterior products; plumbing supplies including solvents, glues, metals (i.e. copper, brass, steel, galvanized), plastics, PVC materials, solder and similar products; landscaping materials such as mulch, plants, trees, shrubs, soils and associated materials; as well as other materials that might be stored in such a manner as to come in contact with stormwater as it falls or moves across the ground. Any of these materials may potentially cause pollutants to be released in stormwater discharges from the site. Neither SWPPP describes the controls that will be used to reduce these pollutants from the stormwater discharges from the site.

5. **Failure of the SWPPPs to describe how protective measures will be maintained (§ 3.5.7)**

The SWPPPs do not describe procedures that ensure that vegetation, erosion and sediment control measures, buffer zones, and other protective measures identified in the plan are kept in good working and effective operating condition. Instead, there is only a bare statement that the erosion and sediment controls will be properly maintained without any description of how this statement will be implemented.

6. **Failure of the SWPPPs to address non-stormwater discharges (§ 3.5.9)**

The SWPPPs do not address non-stormwater discharges other than a simple statement that concrete trucks are not allowed to wash out on site. This is inadequate. It is common practice in this area and throughout the region and country for cement trucks to washout on site, and this is likely to occur at the Legends at Washington Pike Subdivision. Further, the SWPPPs do not address other sources of non-stormwater discharges such as equipment washing, landscape watering, irrigation, facility washdowns, street washing, equipment storage, fuel storage, equipment repairs, and other similar activities.

**D.    INADEQUATE SELF-INSPECTIONS**

1. **Failure of self-inspections to identify failing erosion prevention and sediment controls (§3.5.8.2(c))**

Exhibit 1

To date, both Sharp Construction and Clear Creek Construction have submitted inspection reports signed by certified stormwater inspectors as required by § 3.5.8.1. However, these inspection reports have failed to identify problems with on-site EPSCs that are evidenced by TDEC and Knox County inspections, as well as TCWN observations on at least the following dates[8]:

5/11/09
5/15/09
6/11/09
6/16/09
6/23/09

2. **Failure to inspect outfall points to determine whether erosion prevention and sediment control measures are effective in preventing significant impacts to receiving waters (§ 3.5.8.2(d))**

TCWN has evidence that indicates that EPSCs were not effective in preventing significant impacts to receiving waters. The Legends developers and contractors have failed to inspect outfalls during rain events to determine whether their EPSCs are effective. At a minimum, each date on which there was a self-inspection that corresponds to a date of a water quality violation or another discharge violation (i.e., discharging excess sediments due to ineffective EPSCs) is also a violation of this permit section. The Legends site has violated this requirement on at least the following dates:

5/1/09 (Clear Creek and Sharp)
5/4/09 (Clear Creek)
5/5/09 (Sharp)
5/6/09 (Clear Creek and Sharp)
5/7/09 (Sharp)
5/11/09 (Clear Creek)
5/26/09 (Clear Creek)
6/5/09 (Clear Creek)
6/11/09 (Clear Creek)
6/16/09 (Clear Creek)

**E. FAILURE TO SUBMIT NOTICES OF INTENT**

Section 1.4.1 of the TNCGP requires all site operators to submit a notice of intent ("NOI") in order to obtain permit coverage. Section 2.1 of the TNCGP requires any party that has either operational and design control or day-to-day operational control to submit an NOI. Section 2.4.3 requires a new operator to submit a supplemental NOI no later than 2 days prior to assuming control or conducting work at the site. Therefore, any site operator who has failed to submit an NOI is not covered by the permit and is discharging pollutants to waters of the United

---

[8] All of the listed dates were inspections by Clear Creek Construction. Also, the most recent self-inspection report in the TDEC files is complete through the end of June 2009. Hence, there may be additional violations in July prior to the date of this notice letter.

Exhibit 1

States without an NPDES permit in violation of Sections 301 and 402 of the CWA, or they are discharging in violation of the TNCGP and Sections 301 and 402 of the CWA. Only Babelay Farm, LLC has submitted an NOI.[9] All other entities that have operational and design control or day-to-day operational control are in violation of these requirements. These violations began on the date when each respective operator obtained control, and are ongoing.

## F. CREATING NUISANCE AND HEALTH HAZARDS

Sediment-laden water from the Legends site has contaminated groundwater that reaches a well on the McMillan farm. This well is used as both a domestic water supply and as a source of water for livestock. This well contamination constitutes a private nuisance and a health hazard. The well contamination is ongoing and is likely to be permanent. In addition, Legends discharges excessive amounts of sediment-laden water to Washington Pike and to McCampbell Drive. These discharges constitute public nuisance. TCWN has documented violations of this provision on the following dates:

- 4/10/09 (McCampbell Drive)
- 5/5/09 (well)
- 5/8/09 (well)
- 5/10/09 (well)
- 5/15/09 (Washington Pike)
- 5/16/09 (well)
- 5/17/09 (well)
- 5/18/09 (well)
- 5/19/09 (well)
- 5/20/09 (well)
- 6/4/09 (well)
- 6/4/09 (McCampbell Drive)
- 6/5/09 (well)
- 6/6/09 (well)
- 6/9/09 (well)
- 6/10/09 (McCampbell Drive)
- 6/11/09 (McCampbell Drive & well)
- 6/21/09 (McCampbell Drive & well)
- 6/22/09 (well)
- 6/24/09 (well)
- 7/9/09 (McCampbell Drive)
- 7/13/09 (well)
- 7/15/09 (well)

---

[9] Babelay Farm, LLC has instead violated § 2.3.1(e) because it is a permittee with design control who has failed to ensure that all operators on the site have permit coverage.

12

Exhibit 1

## G.    FAILURE OF THE SWPPPS TO IDENTIFY EACH OUTFALL

Section 3.5.1(g) of the TNCGP requires SWPPPs to include a "careful identification on the site map of outfall points intended for coverage under the general permit for storm water discharges from the site."  The SWPPPs submitted by Babelay Farm, LLC for the driveway improvements associated with TNR133211 fail to identify outfalls to the Wyngate Subdivision, and to the Steeple Shadow Condominiums.  The January 2005 SWPPP submitted by Babelay Farm, LLC for the McCampbell Farms Subdivision (TNR1301217) indicates fails to identify outfalls at the two McCampbell Drive construction entrances and to the Wyngate Subdivision. In addition, because the outfalls must be properly identified in the SWPPP in order to obtain permit coverage, *any* discharge from these outfalls is unpermitted and violates Sections 301 and 402 of the CWA.  These failures to identify all outfalls and to obtain permit coverage for each outfall are continuous violations that began upon commencement of construction-related clearing activities (see footnote 4).

## H.    FAILURE TO COMPLY WITH TDEC DIRECTOR'S ORDER NO. 09-0073

Babelay Farm, LLC and Sharp Contracting, Inc. are in violation of TDEC Director's No. 09-0073 dated June 11, 2009.[10]  This Director's Order is "an order issued by the ... State with respect to [an effluent] standard or limitation," 33 U.S.C. § 1365(a)(1)(B), and is thus subject to enforcement through a citizen suit.  Specifically, Babelay Farm, LLC and Sharp Contracting have not: submitted a certification by a licensed professional engineer indicating whether the current SWPPP has been implemented (XVIII(1)); submitted an updated SWPPP modifying inappropriate EPSC measures (XVIII(2)); fully implemented new EPSC measures (XVIII(3)); complied with all provisions of the TNCGP and secured weekly inspections by a professional engineer (XVIII(4)); and paid a non-contingent civil penalty (XVIII(5)(a)).  These violations began on the dates that they were due to TDEC as specified in the order,[11] and are ongoing.

## PERSONS RESPONSIBLE FOR VIOLATIONS

Victor Jernigan, Babelay Farm, LLC, Babelay Farm II, LLC, and Legends at Washington Pike, LLC are liable as owners/developers pursuant to TNCGP § 2.2.1 and as permittees with design control pursuant to TNCGP § 2.3.1.  Sharp Contracting, Inc., Clear Creek Construction, LLC, and Hathaway Construction Co., Inc. are liable as permittees with day-to-day operational control pursuant to TNCGP § 2.3.2.  All parties that violate their duty to comply with the TNCGP are liable under the CWA.

---

[10] TCWN is aware that both respondents have appealed this order. However, absent a stay, the order remains in full effect during the pendency of these appeals.

[11] Section XVIII specifies compliance deadlines based on the date of receipt of the order.  The order was mailed on June 11, and was likely received within 2-3 days.  The first 2 items were due within 15 days of receipt of the order. New EPSCs were to be implemented within 7 days of updating the SWPPP.  Weekly inspections by a professional engineer were to begin immediately.  The noncontingent penalty was due within 30 days.

Exhibit 1

**PERSONS GIVING NOTICE**

The Tennessee Clean Water Network is a Tennessee nonprofit corporation. TCWN empowers Tennesseans to claim their right to clean water and healthy communities by fostering civic engagement, building coalitions and advancing water policy for a sustainable future. In recent years, TCWN has focused on stormwater violations in east Tennessee, and has repeatedly requested that TDEC, Knox County, and other governmental bodies enforce applicable permit limitations. TCWN is a membership organization, and has several members who are injured by illegal discharges from the Legends at Washington Pike Subdivision.

Charles S. McMillan is a farmer who owns an approximately 179-acre property adjacent to the Legends at Washington Pike Subdivision, including the domestic well that has been contaminated by the Legends construction site. Murphy Creek and Whites Creek both flow through his property. James McMillan, Charles' son, pastures his cows on the property. His cows drink from Whites Creek and Murphy Creek and also from the contaminated well.

The names, addresses, and phone numbers of the persons giving notice are:

Renee Hoyos
Tennessee Clean Water Network
123A South Gay Street
Knoxville, TN 37902
865-522-7007 x 100

Charles S. McMillan
4715 McCampbell Drive
Knoxville, TN 37918
865-687-6833

James McMillan
4715 McCampbell Drive
Knoxville, TN 37918
(865) 689-1502

TCWN and the McMillans demand that you immediately cease these serious violations of the Clean Water Act and remedy the damage that your violations have caused. TCWN and the McMillans intend to file suit under section 505(a) of the CWA in sixty days unless a voluntary settlement is reached during that time. Pursuant to the CWA, this suit will seek penalties of up to $37,500 per day per violation, injunctive relief, fees and costs of litigation, and revocation of coverage under the TNCGP.

All communication relating to this matter should be directed to me at the address and phone number listed above.

Exhibit 1

Sincerely,

Stephanie Durman Matheny
Staff Attorney

Albert Ettinger, of counsel
Environmental Law & Policy Center
65 E. Wacker Drive, Suite 1300
Chicago, IL 60601

Gary A. Davis & Jamie Whitlock, of counsel
Gary A. Davis & Associates
61 North Andrews Avenue
Hot Springs, North Carolina 28743

cc:    **(by certified mail, return receipt requested)**

Ms. Lisa Jackson, Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Tracking #7008-0500-0000-7803-1933

Stan Meiburg, Acting Regional Administrator
U.S. Environmental Protection Agency
Region 4
Atlanta Federal Center
61 Forsyth Street, SW
Atlanta, GA 30303-3104

Tracking #7008-0500-0000-7803-1940

Eric H. Holder
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Tracking #7008-0500-0000-7803-1995

James Fyke, Commissioner
Tennessee Department of Environment and Conservation
1st Floor, L&C Annex
401 Church Street
Nashville, TN 37243

Tracking #7008-0500-0000-7803-1957

Paul E. Davis, P.E., Director
Tennessee Department of Environment and Conservation
Division of Water Pollution Control
6th Floor, L&C Annex
401 Church Street
Nashville, TN 37243-1534

Tracking #7008-0500-0000-7803-1964

Exhibit 1

R. Scott Elmore & Virginia Couch, Registered Agents    Tracking #7008-0500-0000-7803-1971
Babelay Farm, LLC; Babelay Farm II, LLC; Legends at Washington Pike, LLC; Clear Creek
Construction. LLC
5301 Kingston Pike
Knoxville, TN 37919

Darlene T. Marsh, Registered Agent            Tracking #7008-0500-0000-7803-1988
Hathaway Construction Co., Inc.
700 Two American Ctr
3102 West End Ave.
Nashville, TN 37203

Exhibit 2



Tel: (865) 522-7007
Fax: (865) 525-4988

info@tcwn.org
www.tcwn.org

P.O. Box 1521
Knoxville, Tennessee 37901

123A South Gay Street
Knoxville, TN 37902

August 27, 2009

Victor Jernigan
108 Stekoia Lane, Suite 103
Knoxville, TN 37912

Tracking #7008-0500-0000-7803-2008

Jeff McBride
Babelay Farm, LLC and Babelay Farm II, LLC
108 Stekoia Lane, Suite 103
Knoxville, TN 37912

Tracking #7008-0500-0000-7803-2015

Jeff McBride, President
Clear Creek Construction, LLC
108 Stekoia Lane, Suite 103
Knoxville, TN 37912

Tracking #7008-0500-0000-7803-2022

James Lee Sharp, Registered Agent
Sharp Contracting, Inc.
235 South Old Glory Road
Maryville, TN 37801

Tracking #7008-0500-0000-7803-2039

Managing Agent
The Legends at Washington Pike, LLC
3085 Vineville Ave.
Macon, GA 31204

Tracking #7008-0500-0000-7803-2046

David S. Hathaway, Chairman
Hathaway Construction Co., Inc.
5901-C Peachtree
Dunwoody Road, Suite 495
Atlanta, GA 30328

Tracking #7008-0500-0000-7803- 2053

**By Certified Mail – Return Receipt Requested**

**RE:**   **Legends at Washington Pike Subdivision**
**First Addendum to July 29, 2009 Notice of Violation Pursuant to Section 505(b)(1)(A) of the Federal Clean Water Act, 33 U.S.C. § 1365(b)(1)(A)**

Dear Sirs:

Exhibit 2

This letter is to notify Victor Jernigan, Babelay Farm, LLC, Babelay Farm II, LLC, Clear Creek Construction, LLC, Sharp Contracting, Inc., Legends at Washington Pike, LLC, and Hathaway Construction Co., Inc., as well as the state and federal agencies listed below, of additional ongoing violations of the Clean Water Act ("CWA") at the Legends at Washington Pike Subdivision and of an additional plaintiff who wishes to join the lawsuit.

## DESCRIPTION OF VIOLATIONS

The following additional violations are ongoing and are likely to continue upon filing of this lawsuit:

A.     **FAILURE TO PROPERLY DESIGN AND MAINTAIN EROSION PREVENTION AND SEDIMENT CONTROLS**

    8. **Failure to remove flocculant used for sediment control prior to discharge (§ 3.5.3.1(f))**

Starting on approximately July 15, 2009, contractors at the Legends site began using a flocculant (likely polyacrylamide) to treat its stormwater discharges from Outfalls 1 and 2. However, this flocculant has not been removed prior to discharge, and has itself become a pollutant discharged in violation of § 3.5.3.1(f) of the Tennessee Construction General Permit ("TNCGP"), which requires that EPSC materials be "removed or otherwise prevented from becoming a pollutant source for storm water discharges."[1] The site has discharged this flocculant on multiple dates, including, but not limited to:

7/10/09 (Outfall 2)
7/12/09 (Outfall 2)
7/13/09 (Outfalls 1 & 2)
7/15/09 (Outfalls 1 & 2)
7/26/09 (Outfalls 1 & 2)
7/27/09 (Outfall 2)
8/11/09 (Outfalls 1 & 2)
8/16/09 (Outfalls 1 & 2, and to the Wyngate Subdivision)
8/19/09 (Outfall 2)
8/20/09 (Outfalls 1 & 2)

---

[1] In addition, every time the site discharges this flocculant from Outfall 1, it is in violation of § 3.5.6, which requires stormwater dischargers to comply with additional EPSC requirements of local MS4s. This outfall discharges to the City of Knoxville, where the use of polyacyrlamide is not permitted.

2

Exhibit 2

## B.   CAUSING OR CONTRIBUTING TO WATER QUALITY VIOLATIONS

### 3.   Discharging stormwater that contains floating oil (§ 4.3.2(b))

On the dates when the site has discharged flocculant in its stormwater, the discharges have also contained visible floating oils in violation of the water quality requirements of § 4.3.2(b). This has occurred on multiple dates, including, but not limited to:

7/10/09 (Outfall 2)
7/12/09 (Outfall 2)
7/13/09 (Outfalls 1 & 2)
7/15/09 (Outfalls 1 & 2)
7/26/09 (Outfalls 1 & 2)
7/27/09 (Outfall 2)
8/11/09 (Outfalls 1 & 2)
8/16/09 (Outfalls 1 & 2, and to the Wyngate Subdivision)
8/19/09 (Outfall 2)
8/20/09 (Outfalls 1 & 2)

## PERSONS GIVING NOTICE

The name, address, and phone number of the additional person giving notice of Clean Water Act violations is:

Michael McMillan
4715 McCampbell Drive
Knoxville, TN 37918
865-687-6833

All communication relating to this matter should be directed to me at the address and phone number listed above.

Sincerely,

Stephanie Durman Matheny
Staff Attorney

Albert Ettinger, of counsel
Environmental Law & Policy Center
65 E. Wacker Drive, Suite 1300
Chicago, IL 60601

Gary A. Davis, Rebecca Vernetti, and
Jamie Whitlock, of counsel
Gary A. Davis & Associates
61 North Andrews Avenue
Hot Springs, North Carolina 28743

3

Exhibit 2

cc:     **(by certified mail, return receipt requested)**

Ms. Lisa Jackson, Administrator                Tracking #7008-0500-0000-7803-2060
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Stan Meiburg, Acting Regional Administrator    Tracking #7008-0500-0000-7803-2077
U.S. Environmental Protection Agency
Region 4
Atlanta Federal Center
61 Forsyth Street, SW
Atlanta, GA 30303-3104

Eric H. Holder                                 Tracking #7008-0500-0000-7803-2084
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

James Fyke, Commissioner                       Tracking #7008-0500-0000-7803-2091
Tennessee Department of Environment and Conservation
1st Floor, L&C Annex
401 Church Street
Nashville, TN 37243

Paul E. Davis, P.E., Director                  Tracking #7008-0500-0000-7803-2107
Tennessee Department of Environment and Conservation
Division of Water Pollution Control
6th Floor, L&C Annex
401 Church Street
Nashville, TN 37243-1534

R. Scott Elmore & Virginia Couch, Registered Agents Tracking #7008-0500-0000-7803-2114
Babelay Farm, LLC; Babelay Farm II, LLC; Legends at Washington Pike, LLC; Clear Creek
Construction. LLC
5301 Kingston Pike
Knoxville, TN 37919

Darlene T. Marsh, Registered Agent             Tracking #7008-0500-0000-7803-2121
Hathaway Construction Co., Inc.
700 Two American Ctr
3102 West End Ave.
Nashville, TN 37203