UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION AT KNOXVILLE

FRANKENMUTH INSURANCE COMPANY, )
)
    **Plaintiff,** )
)
v. ) Civil Action No.: 3:10-CV-231
)
CLEAR CREEK CONSTRUCTION, LLC, )
)
    **Defendant.** )

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Comes now the Plaintiff, Frankenmuth Insurance Company (hereinafter "Frankenmuth"), and submits its Memorandum of Law in support of its Motion for Summary Judgment.

### Summary of Argument

The policy does not provide coverage for the damages alleged by the plaintiffs in the case of *Tennessee Clean Water Network, Charles McMillan, James McMillan and Michael McMillan v. Babelay Farm, LLC, Clear Creek Construction, LLC, Sharp Contracting, Inc., The Legends at Washington Pike, LLC, and Hathaway Construction Co., Inc.,* In the United States District Court for the Eastern District of Tennessee, Northern Division at Knoxville, Docket No. 3:09-CV-449 (hereinafter "*McMillan* action"). Therefore, Frankenmuth does not owe Clear Creek Construction, LLC (hereinafter "Clear Creek") a defense or an obligation to indemnify because the alleged

event (discharge of sediment into the ground and surface waters) and the damages sought fall squarely within the pollution exclusion of the subject policy.

## Undisputed Material Facts

Clear Creek was hired as the general contractor for construction of the roadway in the Legends subdivision. (Court File No. 1). Frankenmuth issued Clear Creek a commercial general liability policy on January 20, 2009 with a policy term from February 12, 2009 to February 12, 2010 bearing Policy No. CPP6012556. (Court File No. 1-1). Construction on the roadway began in March 2009.

On October 15, 2009, the Tennessee Clean Water Network, Charles McMillan, James McMillan and Michael McMillan initiated suit against Clear Creek and other defendants. (Court File No. 1-2). According to the Complaint, Clear Creek and the other defendants discharged sediment into the ground and surface waters contaminating drinking wells and creeks on the McMillan farm. (Court File No. 1-2). The Complaint further alleges that Clear Creek and/or the other defendants failed to take the necessary and legally required steps to prevent the discharge and suspension of sediment in the storm water discharge from the Legends subdivision. (Court File No. 1-2). The actions of Clear Creek and the other defendants violated the Federal Clean Water Act codified at 33 U.S.C. § 1251 *et seq.*; the Tennessee Water Quality Control Act codified at T.C.A. § 69-3-101 *et seq.*; and other related common law claims. (Court File No. 1-2).

Clear Creek tendered the lawsuit to Frankenmuth who is defending under reservations of rights. (Court File No. 1). Frankenmuth has initiated the instant declaratory judgment action to have the Court declare that the claims contained in the

2

*McMillan* action are excluded from the policy issued to Clear Creek and Frankenmuth does not have a duty to defend or indemnify. (Court File No. 1).

## Law and Argument

Frankenmuth seeks a declaration by the Court that, under the undisputed facts, its policy of insurance with Clear Creek (No. CPP6012556) does not provide coverage for any damages which may be awarded against Clear Creek in the *McMillan* action, and there is no duty on the part of Frankenmuth to provide Clear Creek a defense under the policy.

**The scope of the pollution exclusion in the policy is immaterial to the determination of the issue presented.**

This case deals with the discharge of sediment into ground and surface waters and is the very type of environmental pollution the pollution exclusion was intended to exclude. *See, Sulfuric Acid Trading Co., Inc. v. Greenwich Insurance Co.*, 211 S.W.3d 243 (Tenn. Ct. App. 2006). Therefore, it is not necessary for the Court to wade into the debate regarding the scope of the pollution exclusion or attempt to determine which of the two competing interpretations is appropriate under Tennessee law. *See, In re Idleaire Technologies Corp.*, 2009 WL 413117 (D. Del. Feb. 18, 2009). The Tennessee Appellate Court determined that it is unnecessary to decide the issue in a classic environmental pollution case. *See, Sulfuric Acid Trading Co., Inc. v. Greenwich Insurance Co.*, 211 S.W.3d 243 (Tenn. Ct. App. 2006). This is because the debate surrounding the scope of the pollution exclusion involves cases dealing with the negligent use or handling of toxic substances that occur in the normal course of business. *See, Fireman's Fund Co. of*

3

*Washington D.C. v. Kline & Sons Cement Repair, Inc.*, 474 F.Supp.2d 779 (E.D. Va. 2007); *See also, MacKinnon v. Truck Insurance Exchange*, 73 P.3d 1205 (Cal 2003). Since this case does not involve the negligent use or handling of toxic substances that occur in the normal course of business, there is no need to determine which of the two analytical approaches Tennessee would adopt. Instead, this Court need only decide if Clear Creek's role in allowing sediment-laden storm water to contaminate McMillan's ground and surface waters triggers the pollution exclusion under the plain, unambiguous terms of the policy.[1]

### Sediment is a pollutant.

In the *McMillan* action, the plaintiffs allege that Clear Creek and other defendants allowed sediment-laden storm water run-off to enter local tributaries contaminating the McMillan's ground and surface waters. (Court File 1-1). Under the policy, coverage is excluded for "'[b]odily injury' or 'property damage' arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants'." (Court File No. 1-2). Pollutants are defined as "...any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed." (Court File No. 1-2). Contaminant is defined as "something that 'makes impure or unsuitable by

---

[1] If the Court determines that resolving the scope of the pollution exclusion under Tennessee law is necessary to its determination of the issue presented, certification to the Tennessee Supreme Court should be considered. *See, Elkins v. Moreno*, 435 U.S. 647 (1978). This is clearly an unsettled issue under Tennessee law. *See, Sulfuric Acid Trading Co., Inc. v. Greenwich Insurance Co.*, 211 S.W.3d 243 (Tenn.Ct.App. 2006). Three federal courts have attempted to determine how Tennessee would decide the issue and each reached a different result. *See, CBL & Assoc. Mgmt. Inc. v. Lumberman's Mut. Cas. Co.*, 2006 WL 2087628 (E.D. Tenn. July 25, 2006); *In re Idleaire Technologies Corp.*, 2009 WL 413117 (D. Del. Feb. 18, 2009); *State Automobile Mutual Insurance Co. v. Frazier's Flooring, Inc.*, 2009 WL 693142 (E.D. Tenn. March 13, 2009).

4

contact or mixture with something unclean, bad, etc.'" *Travelers Indemnity Co. of Conn. v. Douglasville Development, LLC.,* 2008 WL 4372004 (N.D. Ga. Sept. 19, 2008) (quoting *Owners Insurance Co. v. Lullwater Apts, LLC,* No. 02-14556 (11th Cir. Dec. 30, 2002)) (unpublished opinion).

The Tennessee General Assembly and the United States Congress consider sediment and stormwater run-off to be pollutants. *See, Tenn. Code Ann.* § 39-14-408(b)(2)(pollutants include dredged soil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical waste, biological materials, radioactive materials, wrecked or discarded equipment, rock, sand, cellar dirt, and industrial, municipal and agricultural waste…); *Tenn. Code Ann.* §69-3-103 (26)("[p]ollutant means sewage, industrial waste, or other wastes); *Tenn. Code Ann.* §69-3-103 (22)("[o]ther wastes" means any and all other substances or forms of energy, with the exception of sewage and industrial wastes, including, but not limited to, decayed wood, sand, garbage, silt, municipal refuse, sawdust, shavings, bark, lime, ashes, offal, oil, hazardous materials, tar, sludge, or other petroleum byproducts, radioactive material, chemicals, heated substances, dredged soil, solid waste, incinerator residue, sewage sludge, munitions, biological materials, wrecked and discarded equipment, rock, and cellar dirt); 33 U.S.C. §1362(6)("pollutant" means dredged soil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water.)

5

In addition, numerous jurisdictions hold that sediment is a pollutant. *See, North Carolina Shellfish Growers Ass'n v. Holly Ridge Associates, LLC.*, 278 F. Supp. 2d. 654 (E.D. N.C. 2003); *Tungett v. Papierski*, 2006 WL 51148 (E.D. Tenn. Jan. 10, 2006); *Borden Ranch P'Ship v. United States Army Corp of Eng'rs*, 261 F.3d 810, 815 (9th Cir. 2001) ("soil [that] was wrenched up, moved around, and redeposited somewhere else" was a pollutant); *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 311 F.Supp.2d 91, 93 n. 1 (D.D.C. 2004) ("Earth that is removed during ditching and other landclearing operations is also considered a 'pollutant' under the CWA."); *Hanson v. United States*, 710 F.Supp. 1105, 1108 (E.D. Tex. 1989); *Driscoll v. Adams*, 181 F.3d 1285, 1291 (11th Cir. 1999) (Sand, silt, and rainwater runoff are pollutants under the Clean Water Act); *Hughey v. JMS Dev. Corp.*, 78 F.3d 1523, 1525 n. 1 (11th Cir. 1996) ("Under the Clean Water Act, the term pollutant is inclusive of rock, sand, cellar dirt and industrial municipal and agricultural waste discharged into water. When rainwater flows from a site where land disturbing activities have been conducted… it falls within this description."). Accordingly, because sediment and storm water run-off have a detrimental effect on the quality of waters in which they flow, and may present imminent and substantial endangerment to health and environment, sediment and storm water run-off fall within the ordinary meaning of contaminant and is therefore a pollutant as defined by the policy. *Travelers Indemnity Co. of Conn. v. Douglasville Development, LLC.*, 2008 WL 4372004 (N.D. Ga. Sept. 19, 2008) (quoting *Owners Insurance Co. v. Lullwater Apts, LLC,* No. 02-14556 (11th Cir. Dec. 30, 2002) (unpublished opinion).

## The Discharge of Sediment into Ground and Surface Waters is Pollution as Defined by the Policy.

Since sediment-laden storm water is a pollutant, the pollution exclusion applies if the injury and/or damages alleged in the *McMillan* action arise out of the discharge or migration of the sediment-laden storm water. While no Tennessee Court has determined if the discharge of sediment into ground and surface waters triggers the pollution exclusion, a number of other jurisdictions have and hold that the discharge of sediment into ground and surface waters falls within the pollution exclusion. *See e.g, Fireman's Fund Co. of Washington D.C. v. Kline & Sons Cement Repair, Inc.*, 474 F.Supp.2d 779 (E.D. Va 2007); *New Salida Ditch Co. v. United Fire & Casualty Ins. Co.*, 2009 WL 5126498 (D.Colo. Dec. 18, 2009) ("...fill material, when introduced to a relatively pure waters of the Arkansas River, acts as a 'contaminant'" and would constitute a pollutant under the total pollution exclusion, thereby excluding coverage.); *Pennsylvania National Mut. Cas. Ins. Co. v. Triangle Paving, Inc.*, 973 F.Supp. 560 (E.D. NC 1996); *Essex Insurance Co. v. H & H Land Development Corp.*, 525 F.Supp.2d 1344 (M.D. Ga. 2007); *Chadd's Lake Homeowner's Association, Inc.*, 2007 WL 155388 (N.D. Ga. 2006); *Travelers Indemnity Co. v. Douglas Fill Development, LLC*, 2008 WL 4372004 (N.D. Ga. 2008); *Ortega Rock Quarry v. Golden Eagle Ins. Co.*, 46 Cal.Rptr.3d 517 (2006); *Legion Insurance Co. v. Wisconsin-California Forest Products*, 2001 WL 35809243 (E.D. Cal. Oct 19, 2001) (Citizen's suits filed under the Clean Water Act for purposes of enforcing an NPDES permit falls squarely within the pollution exclusion.)

7

The *McMillan* action is centered around the discharge of sediment-laden storm water and the resultant damages it caused. (Court File No. 1-1). Sediment is clearly a pollutant and its discharge onto the McMillan property is clearly pollution. Accordingly, Frankenmuth is entitled to summary judgment including a declaration that it has no duty to defend or indemnify Clear Creek in the *McMillan* action.

## Conclusion

Based on the undisputed material facts and the applicable law, Frankenmuth is entitled to summary judgment and an Order declaring that the pollution exclusion in the applicable policy excludes coverage and absolves Frankenmuth of a duty to defend and/or indemnify Clear Creek in the *McMillan* action.

Respectfully submitted by:

**LEITNER, WILLIAMS, DOOLEY & NAPOLITAN, PLLC**


BY: __/s/ Cherie D. Jewell__
**THOMAS A. WILLIAMS, BPR # 001688**
**CHERIE D. JEWELL, BPR #020835**
Attorneys for Plaintiff
801 Broad Street, Third Floor
Chattanooga, TN  37402-2621
(423) 265-0214   (423) 267-6625 [fax]

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2010, I electronically filed a **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

>David L. Hill, Esq.
>RAMSEY, ELMORE & STONE, PLLC
>5616 Kingston Pike, Suite 301
>Knoxville, TN 37919

>BY: /s/ Cherie D. Jewell
>**THOMAS A. WILLIAMS, BPR # 001688**
>**CHERIE D. JEWELL, BPR #020835**